COBB v. LINDELL RAILWAY COMPANY, Appellant.

Division One, March 30, 1899.*

1. **Pleading** LIBERALLY CONSTRUED. Where the circumstances surrounding a case are such that a liberal construction of pleadings is necessary to prevent a defeat of justice, then they should be so construed. And justice demands a more liberal construction of a petition after answer and verdict than where its sufficiency has been challenged by demurrer or a motion to make more definite. And section 2074, Revised Statutes 1889, requiring a liberal construction of a pleading is construed.

2. ———: ———: NEGLIGENCE: NECESSARY IMPLICATION. An averment that the sudden starting of a street car while plaintiff was in the act of alighting was through the negligence of defendant's servants, carried the implication that the conductor saw her or would have seen her if he had been attending to his business.

3. ———: ———: ———: STARTING CAR. The petition in this case does not seek to charge a liability which would have grown out of a special request to stop the car to allow plaintiff to get off at an unusual place, and starting it suddenly and with unusual force before she had time to alight. But it charges that she requested to get off at a well-known street, that the car slowed up there, that when it had almost stopped so that its motion was almost imperceptible she arose and walked out on the platform, but just as she was in the act of alighting, the car, through the negligence of defendant's servants, was suddenly and violently put in motion, and threw her off, and such charge is sufficient to support a verdict.

*NOTE.—Decided March 7, 1899. Motion for rehearing filed; denied March 30, 1899

4. **Negligence**: DEMURRER TO EVIDENCE. A demurrer to the evidence based on plaintiff's understanding of a stop of the car in the middle of a block to give the right of way to a car on a cross road, which she claimed she understood to be a stop for her to get off, should be overruled, as should any instruction which assumes she had a knowledge of a handling of the cars which the evidence does not show she possessed.

5. ——: PASSENGER AND CONDUCTOR: MUTUAL CARE. The court properly refused an instruction that told the jury that, if the accident was the result of a mutual mistake and misunderstanding between plaintiff and the conductor in relation to signals that passed between them in regard to stopping the car, and if the mistake was such as reasonably prudent persons in like circumstances might make, the plaintiff could not recover. The law requires of the passenger in alighting from the car the care of a reasonably prudent person; and of the conductor, the care a careful and skillful person, exercising a very high degree of care, would take under like circumstances.

6. ——: ——: EXTRAORDINARY CARE IN SERVICE. The degree of care that a railroad company is bound to exercise for the safety of its passengers is not limited to the construction and equipment of the road, but it includes service also.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

BOYLE, PRIEST & LEHMANN for appellant.

(1) The petition does not state a cause of action. McQuillin Plead. & Prac., sec. 280; Cook v. Putnam Co., 70 Mo. 668; Bredel v. Alexander, 8 Mo. App. 110; State ex rel. v. Martin, 77 Mo. 676; Jackson v. Railroad, 118 Mo. 199; Railroad v. Calderwood, 7 So. 360; Booth's Street Ry. Law, sec. 354; Worthington v. Railroad, 72 Mo. App. 162. (2) The demurrer to the evidence should have been sustained. Clotworthy v. Railroad, 80 Mo. 220; Strauss v. Railroad, 75 Id. 185. (3) The case submitted to the jury by plaintiff's instructions was different from that stated in the petition or shown by the testimony. Ely v. Railroad, 77 Mo. 34; Abbott v. Railroad, 83 Id. 271; Price v. Railroad, 72 Id. 414;

Waldhier v. Railroad, 71 Id. 514; Gurley v. Railroad, 93 Id. 445; Schlereth v. Railroad, 96 Id. 515; Haynes v. Trenton, 108 Id. 132; Jacquin v. Cable Co., 57 Mo. App. 327; Worthington v. Lindell, 72 Id. 162.    (4)  The court erred in the degree of skill and care to which it held the conductor in respect to the signals that passed between him and the plaintiff.    Palmer v. Railroad, 111 N. Y. 488; Kelly v. Railroad, 112 Id. 433; Booth Street Ry. Law, sec. 337; Railroad v. Hinds, 53 Pa. St. 512; Meriwether v. Railroad, 45 Mo. App. 533; Boyd v. Railroad, 105 Mo. 371.

Joseph S. Laurie for respondent.

(1)  After the case has proceeded beyond answer and verdict, appellant's counsel asks this court to consider and determine the sufficiency of the petition upon the same rules which would be applicable were this a hearing upon a demurrer to the petition or a motion to make the same more definite and certain.    That practice is condemned by this court as being unfair. McDermott v. Claas, 104 Mo. 21; Young v. Iron Co., 103 Mo. 324; Bank v. Scalzo, 127 Mo. 189; Corpenny v. Sedalia, 57 Mo. 88; Edmonson v. Phillips, 73 Mo. 57; State ex rel. v. Williams, 77 Mo. 463; Bowie v. Kansas City, 51 Mo. 454; Grove v. Kansas City, 75 Mo. 672; Knox Co. v. Brown, 103 Mo. 223; Hurst v. Ashgrove, 96 Mo. 168; Lynch v. Railroad, 111 Mo. 601; Bank v. Leyser, 116 Mo. 51.    (2)  As to the second objection to the effect that there is no allegation in the petition that defendant's servants in charge of the car knew plaintiff was in the act of alighting from the car, or might have known it by the exercise of ordinary care, we submit that said allegations are clearly comprehended in the general charge that defendant's servants negligently started the car while plaintiff was in the act of alighting.    Crane v. Railroad, 87 Mo. 594; Johnson v. Railroad, 96 Mo. 345; Mack v. Railroad, 77 Mo. 232;

Chubbuck v. Railroad, 77 Mo. 593; Hall v. Railroad, 74 Mo. 298; Bowie v. Kansas City, 51 Mo. 456; Ellet v. Railroad, 76 Mo. 518, 535; Schneider v. Railroad, 75 Mo. 295; Sullivan v. Railroad, 97 Mo. 117; Shaw v. Railroad, 104 Mo. 648; Pope v. Railroad, 99 Mo. 404; Dickson v. Railroad, 104 Mo. 502; Le May v. Railroad, 105 Mo. 360; Troth v. Norcross, 111 Mo. 637; Foster v. Railroad, 115 Mo. 177. (3) Where the question of negligence is one of fact, the Supreme Court, so far as concerns a demurrer to the evidence, will only look to see if there is sufficient evidence to support the verdict.   Winters v. Railroad, 99 Mo. 509; Pope v. Railroad, 99 Mo. 400; Barth v. Railroad, 142 Mo. 549; Baird v. Railroad, 146 Mo. 265. (4) Appellant's contention is that the high degree of care which a common carrier is required to exercise for the safety of its passengers is limited to matters of construction and equipment, and does not include the management and service of the company.   We take it that this question has been settled to the contrary by several decisions of this court. Och v. Railroad, 130 Mo. 51; Furnish v. Railroad, 102 Mo. 451; Barth v. Railroad, 142 Mo. 550; Thompson on Carriers of Passengers, p. 202; 23 Am. and Eng. Ency. of Law, p. 1006.   (5)   The verdict is for the right party and should not be disturbed.   Railroad v. Hale, 90 Ala. 12; Dougherty v. Railroad, 81 Mo. 325; Coudy v. Railroad, 85 Mo. 85; Clark v. Railroad, 127 Mo. 210; McDonald v. Railroad, 127 Mo. 138; Schafer v. Railroad, 128 Mo. 64; Hite v. Railroad, 130 Mo. 137; Madden v. Railroad, 50 Mo. App. 675.

VALLIANT, J.—Suit for damages for personal injuries alleged to have been received by plaintiff, a passenger, through the negligence of the servants of defendant carrier.

The petition charges that on the evening of August 20, 1893, plaintiff took passage on one of defendant's street cars at Finney and Vandeventer avenues in St. Louis, intending

to be transported to Washington avenue; that shortly after the car left Finney avenue she paid her fare to the conductor and at the same time informed him that she desired to get off at Washington avenue, to which the conductor replied "all right;" that when the car reached Washington avenue she noticed that apparently it was not going to stop, and she again indicated to the conductor that she wanted to get off at that point, and in reply the conductor nodded his head to her; that immediately, and as if for the purpose of allowing her to alight, the car slowed up as if about to stop, and came so near to a standstill that motion was scarcely perceptible; then she rose from her seat, walked out on the platform, and when the motion of the car had ceased, or nearly so, she descended the steps of the platform and was in the act of alighting, having one foot on the street and the other on the step, when the car, by the negligence of the defendant's servants in charge, was suddenly and swiftly started forward, whereby plaintiff was thrown violently upon the street, and her left thigh and left arm broken.

The answer was a general denial and a plea of contributory negligence.

The testimony on the part of the plaintiff tended to prove the statements in her petition.

At the close of plaintiff's evidence defendant asked an instruction for a nonsuit, which the court refused, and defendant excepted.

The testimony on the part of defendant tended to show that the first indication of plaintiff's desire to stop was the signal she gave the conductor as they were crossing Washington avenue, which he understood to mean a desire to stop at the Olive street crossing, which was the next street south: that as the train approached Olive street the motorman slowed down to observe if the Olive street cars, which had the right of way at that crossing, were near. This he did as was his duty, without signal from the conductor. Seeing the

crossing clear, the motorman put on the power to cross and resumed speed, and then the conductor gave him the signal to stop, which he obeyed, and stopped on the south side of Olive street; that after the power had been put on and the car had resumed speed, plaintiff arose from her seat, went out on the rear platform, and in attempting to alight fell on the street. Defendant's testimony is conflicting on the point as to whether or not the conductor saw the plaintiff when she went out on the platform and attempted to alight.

Defendant read in evidence a city ordinance as follows:

"Sec. 1275. . . . First: No cars when not in actual use for passenger travel shall be kept standing in any street or public thoroughfare. Second: No car shall be allowed to stop on a cross walk, nor in front of any intersecting street, except to avoid collision or to prevent danger to persons in the street. . . . Third: When any car shall be required to stop at the intersection of streets to receive or leave passengers, it shall be stopped so as to leave the rear platform partly over the crossing."

At the close of the evidence defendant asked the court to give a peremptory instruction to the jury to find for defendant, but the court refused and defendant excepted.

Plaintiff asked the following instructions which the court gave, and defendant duly excepted.

"1. If the jury find from the evidence that on the 20th day of August, 1893, the defendant was a carrier of passengers for hire by street railroad, and used the railway and cars mentioned in the evidence for said purpose, and if you further find from the evidence that on said day the defendant's employees in charge of its cars received the plaintiff as a passenger upon its cars, and if you find from the evidence that the plaintiff paid her fare as such passenger to defendant's employee authorized to receive same for the defendant; and if you further find from the evidence that the plaintiff requested defendant's conductor in charge of the car

on which she was such passenger, to allow her to leave said car at Washington avenue crossing, and if you believe from the evidence that upon said car approaching said crossing, it did not stop or slacken up, and that thereupon the plaintiff gave a signal to said conductor to stop said car to enable her to alight therefrom, and if you further find from the evidence that said conductor did in obedience to such signal cause said car to slacken up between Washington avenue and Olive street to enable the plaintiff to alight from said car as such passenger, and if you further find from the evidence that whilst said car was so slackened up, and whilst said car was moving slowly, the plaintiff was in the act of stepping from said car, and whilst doing so, defendant's employees in charge of said cars, either caused or suffered said cars to be started forward, with increased speed, or with a jerk, and that thereby the plaintiff was thrown upon the street and injured, and if the jury further find from the evidence that defendant's servants in charge of its cars, could by the exercise of a very high degree of care, such as would have been used by careful and skillful men under like circumstances, have prevented such movement of said car at such time, and failed to do so, and if the jury further find from the evidence that the plaintiff at the time she attempted to alight from the car was exercising ordinary care for her own safety in doing so, under the circumstances shown in evidence, then plaintiff is entitled to recover.

"2. The court instructs the jury that if they believe from the evidence that the car upon which plaintiff was a passenger came to a stop between Olive street and Washington avenue, and that the conductor saw plaintiff pass from her seat out onto the platform for the purpose of alighting from the car, then it was the duty of the conductor to have held the car stationary until she alighted, or warn her not to alight, if by the exercise of a very high degree of care,

such as would be exercised by careful and skillful men under the same circumstances, he could have done so.

"3.   By the terms 'ordinary care' used in the instructions is meant the degree of care that would be exercised by persons of ordinary prudence under the same or similar circumstances.

"4.   If the jury find for the plaintiff they should assess her damages at such sum as they believe from the evidence will be a fair compensation to the plaintiff:

"1st.   For any pain of body and mind that plaintiff has suffered or will suffer by reason of her injuries and directly caused thereby.

"2nd.   For any loss of the earnings of her labor that she has suffered, or will suffer, by reason of said injuries and directly caused thereby.   The whole not exceeding ten thousand dollars, the amount sued for.

"5.   If under the evidence and the instructions of the court you find in favor of defendant you need merely state in your verdict that you find the issues joined in this cause in favor of the defendant."

Defendant asked a number of instructions all of which were given as asked except the following:

"Again if the plaintiff's effort to get off caused her to fall and her fall and injuries were the result of mutual mistake and misunderstanding between her and the conductor in relation to the signals that passed between them, and the mistake was such as reasonably prudent persons would make under like circumstances then the plaintiff can not recover."   This the court modified to read as follows: "Again if the plaintiff's effort to get off caused her to fall and her fall and injuries were the result of mutual mistake and misunderstanding between her and the conductor in relation to the signals that passed between them, and the mistake was such as a reasonably prudent passenger and a careful and skillful conductor exercising a very high degree of care

would make under like circumstances, then the plaintiff can not recover." To which modification defendant duly excepted.

Defendant also asked the following instruction which the court refused, and defendant duly excepted.

"If the plaintiff understood that the train was being brought to a stop for the purpose of enabling her to get off, then it became her duty before attempting to step off to wait until the car stopped, and if she attempted to get off before it did come to a stop and was injured in consequence thereof, she is not entitled to recover."

·The verdict was for the plaintiff for $5,000; in due time defendant filed motions for a new trial and in arrest, which were overruled; then filed its bill of exceptions and appealed to this court.

Upon this record the defendant presents for our consideration four propositions as constituting the ground of its grievance, to wit:

I. That the petition does not state a cause of action.

Section 2074, Revised Statutes 1889, requires that "in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties."

That statute does not mean to loosen the rules of pleadings where their strict enforcement is fairly demanded, but it means that where the circumstances surrounding the case at the time are such that a liberal construction is necessary to prevent a defeat of justice, then the pleading must be liberally construed. Thus when an answer to the petition has been filed, and a trial of the issues had, it is too late for the losing party to object to the petition for mere informality or for lack of a distinct averment of an essential fact, if it contains averments from which such fact may fairly be inferred. Justice demands a more liberal construction of the petition after answer and verdict than when its suffi-

ciency is challenged by demurrer or motion to make more definite and certain in the first instance.    [Young v. Shickle, II. & H. Iron Co., 103 Mo. 324; McDermott v. Claas, 104 Mo. 14; People's Bank v. Scalzo, 127 Mo. 164.]

The rules of pleading though very technical, and often strict, do not rest alone on the arbitrary will of the law maker, but are founded on that sense of justice which recognizes the right of every party to a lawsuit to require of his adversary a clear and unequivocal statement of his side of the case.    When this right is demanded in due form and in season, it must be heeded as a demand of justice; it will be no answer to say that the demand is technical.    And even after verdict, unless the statements of the petition by fair inference constitute a cause of action, the plaintiff's suit must fail.

But justice will not allow a party to lie in wait for his adversary, take his chances on a verdict and then, if it be against him, profit by the strict technicality of the science of pleading, if a liberal construction will obviate the objection.

This is the meaning of the statute above quoted and thus construed it is designed to prevent a defeat of justice through a mere technicality, yet does not impair the force of the salutary rules of pleading.    In this light the petition in this case must be considered.

The learned counsel for defendant construe the petition as intending to charge a liability which would grow out of a special request to stop the car to allow plaintiff to get off at an unusual place, and starting it suddenly and with unusual force before she had time to alight; then they insist that the petition on that theory omits two essential averments: First, that the car stopped in order to enable her to alight; second, that those in charge of the movement of the car either knew that she was in the act of alighting or might have known it by the exercise of ordinary care; and that it was started, before she had time to alight.

But the petition does not aim to charge a special request of the plaintiff to be let off at an unusual place. It states that her request was to be let off at the Washington avenue crossing, and that when the car reached Washington avenue it seemed to her as if it was not going to stop and she again indicated to the conductor that she wanted to get off at that point, and immediately the car as if in compliance with her request slowed down until its motion was scarcely perceptible, then she attempted to get off but while she was in the act of alighting the car started suddenly and with violence and she was thrown on the street. The inference is that the car stopped at her request and whether exactly at Washington avenue or not is not stated, and is immaterial. And if the conductor in obedience to her request caused the car to stop to let her off, the inference is that he saw her if she then and there attempted to do what he had stopped the car for her to do. Besides the averment that the sudden starting of the car while the plaintiff was in the act of alighting was through the negligence of defendant's servants, carried the implication that the conductor saw her or would have seen her if he had been attending to his business. [Mack v. Railroad, 77 Mo. 233; Crane v. Railroad, 87 Mo. 588; Dougherty v. Railroad, 81 Mo. 325.]

If she was in the act of alighting in view of the conductor or under circumstances which made it his duty to see her and the car was started in a manner to throw her to the street, there would be no necessity to aver that it started before she had a reasonable time to alight. It was negligence to start the car with a violent motion while she was in the act of alighting even if she was slow in her movements.

The petition does not allege that the car came to a full stop, and if it could be inferred that the accident resulted from the attempt of the plaintiff to alight while the car was moving that would be the end of her case. But it is distinctly

stated that the car had so nearly stopped that its motion was scarcely perceptible and that its sudden and violent starting while she was in the act of alighting was the cause of her fall.

The petition is sufficient to support the verdict.

II.    Defendant's second proposition, that the demurrer to the evidence should have been sustained, is based largely on the fact of plaintiff's supposed familiarity with street car travel, but it assumes that she knew many things about the handling of such trains which the evidence does not show she knew.    The testimony showed that she knew that it was customary to stop at the crossing, but does not show that she knew, or that it was a fact, that it was unlawful to stop in the middle of a block to let a passenger off.    She requested to be let off at the crossing, and seeing that he was about to pass the point she signaled the conductor and immediately thereupon the motion of the car changed and there was every indication to her mind that the conductor was making an effort to make amends for his first neglect of duty by stopping the car for her to alight, not on the crossing as he would have done if he had been mindful of her request, but as near to it as possible after he had been reminded by her signal of his direliction.    The testimony does not show, and it would be unreasonable to presume, that she was so proficient in street railroad traffic as to know that the Olive street cars had the right of way, and that the train she was on had stopped to see if Olive street was clear.    If her testimony was true the circumstances indicated to her mind that the train was stopping in obedience to her signal and when she attempted to avail herself of the situation thus made for her, a sudden and violent movement of the car threw her to the street.    Whether or not her testimony was true and whether or not if true the indications justified her conduct were questions for the jury and not for the court.

Counsel for defendant think that the plaintiff's evidence

shows that she knew the usual signals by which the move-
ments of the train were controlled; knew that in this instance
no signal had been given, went out while the train was in
motion without knowledge of the conductor, and in the most
indifferent and careless way, stepped off leisurely without
even placing her hand on the handhold.

But she did not say all that. She said that she knew
that on street cars conductors give signals to the motorman
by means of a bell; whether or not this conductor rang the
bell on this occasion she did not know, did not notice. On
the point of the conductor's knowledge of her movement this
is what she said, on cross-examination: Q. "Then when
the conductor nodded to you, he turned his back toward you,
didn't he?" A. "I don't know; I never looked at him any
more." Q. "You did not see him after that did you?" A.
"He was standing just as he was when I last saw him." Q.
"Standing in which direction?" A. "The way he was, when
I raised my finger to him." Q. "Facing you?" A. "Fac-
ing me at the time, looking that way."

As to the mode of alighting the plaintiff said that when
the car was slowed down she went out on the platform and
there waited until the motion was scarcely perceptible, then
she stepped off one foot to the ground, one on the step and
her hand on the banister or railing, and in that act the sudden
motion of the car came and she was thrown to the street.

The demurrer to the evidence was properly overruled.

III. Defendant's third assignment is that the case sub-
mitted to the jury by plaintiff's instructions was different
from that stated in the petition or shown by the testimony.

Analyzing the first instruction given for the plaintiff,
the learned counsel for defendant divide it into six postu-
lates, viz.:

"1. When the plaintiff got on the car she requested to
be let off at Washington avenue.

"2.   As the car approached Washington avenue it did not stop or slacken.

"3.   Thereupon the plaintiff gave the conductor a signal to stop the car to enable her to alight therefrom. .

"4.   The conductor in obedience to such signal caused the car to slacken up between Washington avenue and Olive street to enable the plaintiff to alight from said car.

"5.   Whilst the car was so slackened up and whilst it was moving slowly, the plaintiff was in the act of stepping from the car.

"6.   Whilst the plaintiff was so stepping from the car, it was caused or suffered to be started forward and thereby the plaintiff was thrown and injured."

Then the counsel for defendant in their brief, say: "The facts postulated in the instruction make a plain case of negligence, because they necessarily imply knowledge by the conductor at the time that the plaintiff was alighting, assent that she should alight, and starting the car again before she could possibly do so.   "But where is the evidence to support the fourth postulate?   There is none and indeed the evidence is all—unanimously and conclusively—to the contrary."

The decision of this point therefore depends simply on what the evidence was. ·

It is the fourth postulate in the above analysis of which defendant complains as being neither in the petition nor the evidence.

Much of what we have above said in considering defendant's first and second propositions applies also to this:   What was in the conductor's mind of course can not be known with certainty, but we must judge from his conduct.   If the plaintiff's testimony was true, the conduct of the conductor and the movement of the car indicated that he was causing it to stop to let her off.   She did not know whether he rang the bell or not, she made no observation of that, but she did know that she signaled him, did know that he recognized the

signal, and did know that that occurred which in ordinary course would occur if he gave the signal to stop, viz., the immediate slowing down of the train. None of the witnesses heard the bell, but they all, except Mr. Wall who was on the sidewalk, were in the rear car, while the bell was presumably on the front platform of the front car, none of the witnesses except the conductor and the motorman say that the bell was not rung, only that they did not notice it. Ragsdale a witness for defendant put it this way: "When we got to Olive street the conductor looked around, he recognized her signal and put his hand on the bell rope; the car slacked up (to see if there was a cable coming either way); he didn't stop, just merely slacked; as the cable slacked, this lady raised up out of her seat, and stood in the aisle; the car started up; she went out on the platform and jumped off. Afterwards the conductor says to me, 'Did you see that?' I says, 'I did.'" According to this witness the conductor not only recognized the signal of the plaintiff, but as if in obedience to it immediately put his hand on the bell cord. According to him also the conductor witnessed the whole transaction. This was the only witness for defendant who claimed to have seen the plaintiff when she fell.

The testimony showed that from Finney to Washington avenue was five blocks, and from Washington avenue to Olive street was one block. Plaintiff boarded the train at Finney avenue but it was not until the conductor came to collect her fare that she told him to stop at Washington avenue which was then but three or four blocks distant, so there was no excuse for his forgetting it, and when he received the reminding signal he knew that Washington avenue was intended.

Out of this condition of the evidence the question fairly arose as to whether or not the car was stopped in compliance to plaintiff's request to let her off, and that question was properly submitted to the jury in the first instruction complained of.

The objection urged to the second instruction is, that "it authorizes the jury to assume that the conductor saw the plaintiff pass from her seat and onto the platform for the purpose of alighting from the car; and advises them that in such case it was the duty of the conductor either to warn her not to alight or to hold the car for her."

This criticism of the learned counsel is founded upon what as we have already pointed out, is their erroneous construction of the petition and the plaintiff's evidence, in both of which the conductor's knowledge of her movement was clearly implied. The fact that the conductor did see her is testified to positively by only one witness and that was Ragsdale a witness for defendant.

IV. Defendant's fourth assignment relates to the court's modification of a paragraph in their instructions whereby the court laid down one degree of care incumbent on the passenger and a higher degree on the carrier's servant. Defendant asked the court to instruct that if the accident resulted in a mutual mistake of plaintiff and conductor in relation to the signals that passed between them, and if the mistake was such that reasonably prudent persons in like circumstances might make, the plaintiff could not recover. But the court modified it to read that if it was such a mistake "as a reasonably prudent passenger, and a careful and skillful conductor exercising a very high degree of care would make under like circumstances, then the plaintiff could not recover.

The case of Kelly v. Railroad, 112 N. Y. 443, cited in support of the proposition that the very high degree of care demanded by the carrier does not attach to every incident of its business, does not reach the question of the care required of the conductor in guarding the safety of passengers while on or in the act of alighting from his train. There the plaintiff had been a passenger but had alighted in safety, and as he was leaving, fell on the stairway because it was slippery. The court held that in furnishing approaches to its cars,

such as platforms, halls, stairways and the like, the carrier is required to exercise only ordinary care.

And in Palmer v. Railroad, 111 N. Y. loc. cit. 492, a passenger, while alighting from the train, slipped on the car platform because ice and snow had accumulated there during the night. The court said: "The accident occurred from a cause which is as common to all other exposed places, as to those of a car platform, and which is inseparable from the nature of a northern climate," and held that the high degree of care and skill required in the construction and equipment of the road and cars, did not apply to that accident. But neither of those cases is in point with the case at bar.

Here we have in comparison, the duty of a conductor directing the movements of his train and guarding the safety of his passengers on the one hand, and the duty of the passenger in observing proper precaution to avoid injury to herself on the other hand.

The position taken by the defendant all through this case seems to assume that plaintiff was bound to know and did know as much about the movements of the train as the conductor himself, but the law does not charge her with such knowledge and the evidence does not show that she possessed it. On cross-examination these questions were asked her. "Q. And you knew it was in the middle of a block, didn't you? A. Yes. Q. And did you not also know that there was a cable line crossed this Vandeventer avenue line at Olive street? A. I knew there was a cable line crossed. . . . Q. Where lines of street cars cross each other you know it was habitual to stop and wait so as to avoid an accident? A. I didn't know it at all. . . . Q. You didn't know it at all? A. I didn't know it; I didn't know that was the rules at all."

But the conductor was chargeable with knowledge of

whatever rules there were on the subject, and if either line of cars had the right of way it was his business to know it.

If the plaintiff's testimony was true, if she understood that the car was stopping in obedience to her request and acted on that understanding, she could not be accused of failing to exercise ordinary care. But if in point of fact the car slowed down to enable the motorman to observe the condition of the Olive street crossing, and not to allow plaintiff to alight, and if it was not safe for passengers to attempt to alight under those circumstances because of the fact that the car was liable to start without signal and without warning, those were facts within the superior knowledge of the conductor, and a superior care devolved on him.

The degree of care that a railroad company is bound to exercise for the safety of its passengers is not limited to the construction and equipment of the road, but includes service also. [Barth v. Street Railway, 142 Mo. 535; Och v. Railroad, 130 Mo. 27; Furnish v. Railroad, 102 Mo. 438; Booth Street R'y Law, sec. 327; Thompson, Carriers of Passengers, p. 202.]

The learned trial judge made no mistake when he drew the demarcation between the degree of care that devolved on the passenger and that which devolved on the conductor.

The instructions given at the request of the defendant in one particular put the case in a more favorable aspect for the defendant than it was entitled to. The jury were instructed that "The ordinances of the city prohibit street cars from stopping in front of intersecting streets except to avoid collisions; and require them when stopping to receive or discharge passengers to stop at the far crossing of an intersecting street." This gives the jury to understand the street cars are not allowed by law to stop in the middle of a block to receive or discharge a passenger. But there is no such ordinance as that. The ordinance read in evidence is: "No car shall be allowed to stop on a cross walk nor in front of an

intersecting street except to avoid collision," etc., and, "when any car shall be required to stop *at the intersection of streets* to receive or leave passengers, it shall be stopped so as to leave the rear platform party over the crossing."

The words in italics were omitted from the instruction and they give the ordinance a very different meaning from that conveyed by the instruction.

Defendant also asked an instruction to the effect that if the plaintiff understood that the car was being stopped to enable her to alight it was her duty to wait until it stopped entirely, and if she attempted to get off before it ceased to move and was injured in consequence she could not recover; which instruction the court refused and defendant excepted. The counsel for defendant in their brief make no point of this and do not assign it for error. We deem it therefore only necessary to say that there was no phase of the evidence that would have justified the giving of that instruction.

The cause was well tried and there is no error in it to the prejudice of defendant.

The judgment of the circuit court is affirmed. All concur, except MARSHALL, J., absent.