WINNIE R. YORK, Respondent, v. THE CITY OF EVERTON, Appellant.

Kansas City Court of Appeals, November 19, 1906.

1. MUNICIPAL CORPORATIONS: Defective Sidewalk: Evidence: Notice: Jury. Evidence is reviewed and held sufficient to send to the jury the questions of the defective sidewalk, and plaintiff's injury by reason thereof, as well as the existence of such defect for a sufficient time to give notice to the city.

2. ——: ——: Personal Injury: Measure of Damages: Instruction. An instruction on the measure of damages for personal injury telling the jury to take into consideration a sum that will compensate the plaintiff for expenses paid or incurred in effecting a cure, etc., is error since it assumes that she paid such expenses and that she was nursed and suffered pain.

York v. Everton.

3. ———: ———: ———: **Instructions.** An instruction is condemned in not limiting the right of recovery for injury to the place mentioned in the petition.

4. ———: ———: ———: **Husband and Wife: Damages: Profits: Evidence.** A wife's household services belong to her husband and she cannot recover therefor in an action for personal injury; neither where she is running her own business can she recover for profits assumed to be lost by reason of her injury, because profits are net gain after the losses and expenses of the business are paid and evidence relating thereto is purely speculative.

5. **WITNESSES: Impeachment: Chastity: Sobriety.** A witness may be impeached by showing his general bad reputation for sobriety and chastity, and this rule applies to both male and female witnesses.

6. **MUNICIPAL CORPORATIONS: Defective Sidewalk: Loose Plank: Instruction.** An instruction telling the jury that if the sidewalk was reasonably safe though it had a loose plank the finding must be for the defendant, is condemned.

7. **DEFINITIONS: Reasonable: Instruction.** There is no necessity for definition of such a word as "reasonable," especially, when the words used for that purpose require a definition as much or more than the word itself, and an instruction defining "reasonable" is condemned.

Appeal from Dade Circuit Court.—*Hon. L. W. Shafer,* Judge.

REVERSED AND REMANDED.

*Ragsdale & Neal* and *Thurman & Timmonds* for appellant.

(1) Loss of business is not a proper element of damage in a suit for personal injuries. Such fact is not admissible in evidence for any purpose, much less a basis for awarding damages in such case. Prior v. Railroad, 85 Mo. App. 371; Brink v. Railroad, 160 Mo. 87; Real Estate Co. v. McDonald, 140 Mo. 605; Wilson v. Weil, 67 Mo. 399; Turner v. Gibbs, 50 Mo. 556. (2) One of the recognized modes of impeaching a witness is to show

121 App.—41

bad reputation for morality, such as bad reputation for virtue and chastity in a woman. Sitton v. Grand Lodge, 84 Mo. App. 208; State v. Shroyer, 104 Mo. 446; State v. Raven, 115 Mo. 419; State v. Grant, 79 Mo. 113; State v. Vandiver, 149 Mo. 513; State v. Sibley, 132 Mo. 102; Kingman & Co. v. Shawley, 61 Mo. App. 57; State v. Shields, 13 Mo. 236. (3) An instruction should not assume the existence of controverted facts. Plumber v. Milan, 70 Mo. App. 601; Evans v. Joplin, 76 Mo. App. 21; Comber v. Miller, 101 Mo. 551; Railroad v. Stock Yards, 120 Mo. 559; Fullerton v. Fordyce, 121 Mo. 13; State v. Marsh, 171 Mo. 529; Mathews v. Railroad, 26 Mo. App. 89. (4) Instruction numbered 1 given on the part of the plaintiff is clearly erroneous. Plummer v. Milan, 70 Mo. App. 602; Prior v. Railroad, 85 Mo. App. 371. (5) The second instruction and the only one, the jury was given upon which it could base a finding for the plaintiff, authorizes a recovery for negligence without confining it to negligence charged in the petition.

*Edward Frieze* and *H. C. Timmonds* for respondent.

(1) Upon examination of the record we are satisfied that this cause will have to be reversed, for errors contained in the instructions. Hence, we shall not trouble the court on the question of reversal. But we respectfully suggest that the record shows so much merit in plaintiff's case that it ought to be remanded for new trial.

BROADDUS, P. J.—The plaintiff's suit is for damages claimed to have been caused by a fall she received on a defective sidewalk of the defendant city, on the 27th day of October, 1904. She alleges that defendant's sidewalk on the east side of Main street was defective, in that the stringers and boards out of which the sidewalk was constructed were old, rotten and decayed, and the boards that made the covering were unnailed and lia-

ble to become misplaced, and were uneven and of different thicknesses; that she, while walking along at the usual and ordinary gait, by the reason of the dangerous and defective condition of said walk, stepped on a loose board, which flew up and let her through said sidewalk, which had the effect of bruising her hand and leg and thigh and wrenching her back, and internally injuring her; that the sidewalk had been out of repair long enough for the defendant by the exercise of ordinary care to have known of its defective condition, etc.; and prayed judgment for three thousand dollars and for a physician to doctor her. The defendant's answer was a general denial. The jury returned a verdict for $600, upon which judgment was rendered, and the defendant appealed.

It is admitted by respondent that the cause should be reversed on account of errors committed by the court in giving certain instructions in her behalf, but she asks that the cause be remanded for a new trial. On the other hand, appellant insists that the plaintiff was not entitled to recover under the testimony and that the cause be reversed without remanding.

The plaintiff, among other things, testified that when she got to the west side of the Blakey building, close to the double door at that point, she stepped on a plank which let her left leg go through and she was thrown down; and that she was thereby injured in her back and hip and left leg, and was also injured internally. Her testimony tends to show that she suffered greatly in consequence of the alleged fall. Her daughter, Lottie Griesel, testified that soon after the alleged accident she was sent for and that she found her mother in bed sick; that she was suffering; that she was pale and sick; and that she was confined to her bed for three weeks; and that she could not do anything since her fall. A Mrs. York, her daughter-in-law, also corroborates plaintiff in relation to her injuries. And another wit-

ness, named Manka, gave evidence tending to show that plaintiff was in a suffering condition on the afternoon of said date. There were several other witnesses who saw plaintiff, who testified tending to show that she was suffering from an injury. Her evidence tended to show that the walk had been built about twelve years prior to the occasion mentioned; that there were rotten stringers and planks in it, and that there were two loose planks near the double door in question. T. J. Blakey, the owner of the block where the sidewalk was located, testified that he had repaired it some; that on the west side about one foot north of the double door mentioned, there was a board loose, without any nail in it; that the walk had sunk some, and that it made that part of it "rotten and rickety;" and that after the injury to Mrs. York the street commissioner notified him to tear out the walk, but that he did not do so, as he was afterwards informed that the street commissioner was tearing it out. B. H. O'Kelly testified that some time in the forepart of the winter previous to plaintiff's fall he passed over the walk and somewhere north of said door there was a board out of it.

The defendant's evidence tended to show that plaintiff was not injured. Her own doctor testified that she was "shamming." Two doctors appointed by the court to examine her testified that they could find no evidence of injury on her person. The defendant's testimony was to the effect that the walk was sound and in a safe condition; and that certain of its officers passed over it almost daily and saw no defects in it whatever, although they were looking to ascertain its condition. Other matters of evidence will be noticed in the course of this opinion.

On this state of evidence, it was for the jury to say whether the plaintiff had been injured by the alleged defect in the walk; and whether, if said walk was unsafe and dangerous, it had so existed for such a length of

time for defendant by the exercise of ordinary care to have discovered and repaired it before plaintiff's said alleged injury. Defendant insists that, in any event, there was no evidence that the defendant had notice of any defect in the walk. But the evidence tends to show that the stringers and planks were rotten so that they would not hold nails and that this condition had existed for a long time prior to the 27th day of October, 1904. If such was the fact, defendant was chargeable with constructive notice of its defective condition.

Instruction one, given at the instance of the plaintiff, was erroneous. The jury were told in the instruction that, if they found for the plaintiff in estimating her damages, they could take into consideration "a sum that will compensate her for the expense she paid or incurred effecting or attempting to effect her cure, caring for and nursing during the period she was disabled." The instruction should have limited her recovery to a reasonable sum for such services, not to what she paid out. It was error, as it assumed that she had paid such expenses. And it was equally objectionable to assume that she had been nursed and cared for; and that she had suffered pain and anguish. [Plummer v. City of Milan, 70 Mo. 601; Evans v. Joplin, 76 Mo. App. 21.]

Instruction numbered two is also defective in that it does not limit plaintiff's right to recover for injury received on account of the defect in the walk *at the place mentioned in the petition.*

Instruction numbered three is defective, because it authorizes a verdict for plaintiff for loss of business and for loss of time, unless in the latter instance she was engaged in an avocation other than her household duties. Her household services belonged to her husband. [Plummer v. City of Milan, 70 Mo. App. 598.] Plaintiff was engaged in the millinery business and she was permitted over the defendant's objection to testify to her loss in that business during her disability. This evidence was

not competent and the instruction authorizing her recovery for such loss should not have been given. It has been said that, "Profits represent the net gain made from an investment or from the prosecution of some business after the payment of all expenses. The net gain depends largely on other circumstances than the earning capacity of the person managing the business. The profits of a business, with which one is connected, cannot, therefore, be made use of as a measure of his earning powers." It was therefore held that evidence going to show the loss in business in cases of this character was speculative. [Pryor v. Railroad, 85 Mo. App. 367.] The instruction is defective for the further reason that it assumes certain facts to be true that were controverted by the defendant. Instruction numbered four is defective for a similar reason.

The defendant for the purpose of impeaching plaintiff offered to show that her reputation was bad for chastity. The court refused the offer. One mode for the impeachment of a witness is to show his general bad moral character; for instance, his general reputation for sobriety or chastity. [Sitton v. Grand Lodge, 84 Mo. App. 208.] And this rule is applicable to both male and female witnesses. [State v. Sibley, 132 Mo. 102.] There are other decisions in our appellate courts to the same effect and the rule seems to be well established.

The court refused the following instruction asked by defendant: "The court instructs the jury that if they find from the evidence that a plank in the sidewalk in question was loose from the stringer and that the injury to the plaintiff was caused thereby, still, if the jury believe from the evidence that the sidewalk in question at the point where the injury is alleged to have occurred was at the time of the injury in a reasonably safe condition for travel in the ordinary modes upon a sidewalk, the jury must find their verdict for the de-

fendant." The instruction was flagrantly faulty. If there was a loose plank in the sidewalk at the place in question, we cannot see how the walk could be otherwise than unsafe.

The court also refused defendant's ninth instruction, which is claimed to have been an error. The instruction seems to state the law, unless the language used to define the word "reasonable" is objectionable, to-wit: *"Reasonable means in a reasonable manner, consistent with reason, in a moderate degree, tolerably."* The definition seems to have been taken from the dictionaries, which are not always reliable when used in a court of law. It is true "tolerably" is treated by such authors as synonymous with "reasonable." But it is not always, if ever, so understood. As used by the people, it does not mean "reasonable," but on the contrary to indicate an indifferent condition or state. We cannot see the necessity for a definition of the word, especially when words are used for that purpose which require definition as much, if not more, than the word sought to be explained. The word "reasonable" was sufficient in itself for the purpose, and did not require to be defined. For the errors noted, the cause is reversed and remanded. All concur.