MARGARETTE W. TORREYSON, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, March 5, 1912.

1. **EVIDENCE: Action for Personal Injuries: Expert Testimony: Physicians: Invading Jury's Province.** In an action for personal injuries, testimony by a physician that plaintiff was suffering from "traumatic neuritis" and that she was suffering from a nervous condition due to a bodily injury, such condition being usually termed a "traumatic neurosis," was not incompetent as invading the province of the jury, since it was merely a statement of the nature and character of plaintiff's ailment, and did not suggest the particular cause thereof.

2. ————: ————: **Physical Ability of Plaintiff: Trial Practice: General Objections.** In an action for personal injuries, evidence that plaintiff, before being injured, kept house for her father and was the main dependence and that she was a faithful daughter and stayed with and kept house for her father, mother and aunt, had some bearing on the question of her physical ability prior to the injury, and was admissible as against a general objection for immateriality.

3. **TRIAL PRACTICE: Misconduct of Counsel: Curing Error.** In an action against a street railroad company, plaintiff's counsel, in his opening argument, referred to great corporations, great millionaires, and great things, in connection with his claim for $35,000 damages. On objection, the court said there was no evidence to support such a statement, and directed counsel to keep within the record, stating that he did not know what millionaires had to do with the case, that the statement was highly improper, and the purpose apparent, and directed counsel to proceed. *Held*, that the court's remarks and admonition were sufficient to cure the error.

4. **APPELLATE PRACTICE: Misconduct of Counsel: Review: Sufficiency of Exception.** Alleged misconduct of counsel in argument cannot be reviewed in the absence of an exception to the ruling of the court thereon; a statement by objecting counsel, "I except to that remark" (meaning that he *objected*), on which objection the court ruled that counsel should proceed with his argument, followed by a statement by objecting counsel, "I submit that the court should rebuke counsel for making that remark," not being sufficient to preserve an exception to the ruling.

5. ————: ————: ————: **Sufficiency of Objection.** An objection to alleged improper remarks of counsel which does not point out the specific statement complained of and does not call the attention of the trial court to the specific grounds upon which it is based is insufficient; and hence an objection in the form, "I except to that statement," made by defendant's counsel at the end of a series of statements by plaintiff's counsel in argument, was insufficient.

6. **INSTRUCTIONS: Assumption of Disputed Facts.** In an action for personal injuries, the court charged that, if the jury found for plaintiff, they should consider such reasonable sums, if any, as plaintiff necessarily paid out for medical treatment and hospital charges, on account of her injuries; the bodily pain and suffering, and mental anguish endured by her resulting from the injuries received; the character and extent of her injuries, and whether they were permanent; the extent, if any, which she had been prevented by reason of such injuries from working and earning a livelihood; and if her injuries were reasonably certain to cause her pain and anguish in the future and to impair or lessen her ability to work or labor, such facts should be taken into consideration also; and if they found for her, they should find in such sum as in their judgment, under all the evidence, would reasonably compensate her for the injuries received, not to exceed the sum named in the petition, etc. *Held*, not erroneous as assuming either that plaintiff was injured or that she had endured bodily pain and suffering and mental anguish.

7. ———: ———. Where, in an action for personal injuries, there was evidence tending to show that plaintiff was bruised and injured to such an extent that she must have endured some bodily pain and mental anguish, and an instruction submitting the question of liability made the return of a verdict for plaintiff conditional upon a finding that she had been bruised and injured, it was not error for the court to assume, in the instruction on the measure of damages, that plaintiff had suffered bodily pain and mental anguish.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

AFFIRMED.     CERTIFIED TO SUPREME COURT.

*Boyle & Priest, Morton Jourdan* and *T. E. Francis* for appellant.

*L. P. Crigler* and *Barclay, Fauntleroy & Cullen* for respondent.

STATEMENT.—The appeal in this case was prosecuted to this court, but was thereafter transferred by it to the Springfield Court of Appeals under the provisions of an act of the Legislature, approved June 12, 1909. [See Laws of Missouri 1909, p. 396; see, also, Sec. 3939, R. S. 1909.] In due time the cause was disposed of by the Springfield Court of Appeals through an opinion prepared by Judge Cox of that court, as will appear by reference to Torreyson v. United Rys. Co. of St. Louis, 144 Mo. App. 626, 129 S. W. 409. Subsequently, the Supreme Court declared the said legislative act, which purported to authorize the transfer of cases from this court to the Springfield Court, to be unconstitutional. The cause was thereafter transferred by the Springfield Court of Appeals to this court on the theory that the jurisdiction of the appeal continued to reside here and the proceedings had in the Springfield Court with reference thereto were *coram non judice.*

The case has been argued and submitted here, and upon due consideration, we find ourselves unable to concur in the view expressed by the Springfield Court in the opinion above referred to.

The suit is one to recover damages for personal injuries received by the plaintiff and alleged to have been caused by the negligent sudden starting of defendant's street car while plaintiff was in the act of alighting, thereby precipitating her to the ground. The amount prayed as damages was $35,000. The plaintiff had verdict and judgment for $5000, and the defendant has appealed.

The record in this case is voluminous and bears most largely upon plaintiff's physical condition before and after her injury. It appears therefrom that in 1906 the plaintiff, Margarette W. Torreyson, was a school teacher, unmarried, forty-three years old, living at Martinsburg, Missouri, where she had resided for thirty-five years. During the last nineteen years she had taught the primary class of the school at Martinsburg, and when injured had been just re-employed for another year. The testimony is abundant to the effect that she was healthy, capable, energetic, active and industrious; not only a good school teacher but a leader in school and public entertainments. She was quick and graceful in her movements. As one of the witnesses put it, "she always went around like a cricket." In all her life down to the time of her injury she appears to have been in perfect general health, missing only about a week from her school duties in all her school teaching career, some twenty-seven years. She had lived with her parents, and toward the latter end of their lives, had the responsibility of the home, her mother being very old. Both of her parents died, the father about five years before she was injured. After his death she still kept

house in the old home, doing all the housework, with the assistance of a negro child.

On July 29, 1906, while visiting in the city of St. Louis, she became a passenger on one of the defendant's Euclid avenue cars and when the car was stopped at her destination, the southwest corner of Euclid avenue and West Pine boulevard, and when, according to her testimony, she was down on the step in the act of alighting therefrom, the operatives in charge caused it to be suddenly started with a jerk, precipitating her to the ground, striking the back of her head on the paving, and cutting a gash in it which bled profusely. The blow dazed her and caused a stunned sensation throughout her body. She was carried to a nearby hotel, and a physician, Dr. Butler, was called. The next day she was removed to a hospital where she remained under the constant care of Dr. Butler and the nurses for nine weeks. Dr. Butler called in for consultation Dr. Fry, an eminent specialist on nervous diseases, who visited and examined her frequently. She testified that while at the hospital she was perfectly helpless, having to be turned in the bed, to have her face washed, etc., suffered intense and almost continuous pain in the back, hip, small of the spine and base of the skull, had no appetite and could not sleep. At the end of the nine weeks, her brother took her from the hospital to his home at Laddonia, Missouri. Her condition was somewhat improved, but she was, and is still, very helpless. From the time she arrived at her brother's house until the day of the trial, she had not left the house but once, and that was for two hours in a roller chair, and that experience proved very exhausting and painful to her. Though weighing only 112 pounds when injured, she lost twenty pounds thereafter. A voluminous record abounds with testimony of those who saw and observed her, to the effect that her former health, ability and energy have been destroyed, her

former activities and industry ceased, and she has be-come a trembling, jerking, twitching nervous wreck, without power to earn a livelihood or to perform ordi-nary household duties, and usually confined to an in-valid chair, able to arise therefrom and walk but for short intervals and then only haltingly, by the aid of a crutch and at the price of intense pain and suffer-ing.

Four physicians, including Doctors Fry and But-ler, testified on behalf of the plaintiff. Their testi-mony tended to prove that she is suffering from a pronounced neurasthenic condition, that is an extreme exhaustion or breaking down of her nervous system, and is unable to perform ordinary labor or to pursue her vocation; that this condition is permanent and was caused by her fall. On the other hand, a physician who examined her at the instance of the defendant tes-tified that he found absolutely no indication that she had sustained any injury to the nervous system as a result of her injury. Another, a specialist in mental and nervous diseases, appointed by the court, testi-fied that though she was quite nervous, he found noth-ing to indicate that the nervousness was in any wise due to any diseased condition of her nervous system. A surgeon, also appointed by the court, testified there was nothing abnormal in her condition from a surgical standpoint, and that he thought her tremors were vol-untary, but he stated on cross-examination that he found physical indications of an abnormal condition, an irritation of the nerves. He also testified that the examination which he and the other physicians ap-pointed by the court had made was too abbreviated and unsatisfactory to justify a decided opinion.

The plaintiff read in evidence the deposition of Captain N. Dix bearing on the length of time plain-tiff taught school, the continuity of her service, the state of her health and strength and the extent and character of her activities during all the years up to

the time of her injury. During such reading the following occurred: (By counsel for plaintiff, reading.) "Q. What, if anything, do you know about her giving attention to her father and aunt during their last sickness? Mr. Jourdon:. Objected to as immaterial. Objection overruled. To which ruling of the court defendant then and there duly excepted. A. That was her main—she kept house for him. She was the main dependence."

Later, while plaintiff was reading in evidence the deposition of one Rogers, the following occurred: (By counsel for plaintiff, reading.) "Q. What you do know of her taking care of her father and mother and aunt? Mr. Jourdan: I renew my objection to that for the reasons heretofore given. Objection overruled. To which ruling of the court defendant then and there duly excepted. A. Well, I think she was a faithful daughter. She stayed with them and kept house for them all. I don't know that she supported them. Q. What labor? A. Oh, well, she kept house." Dr. Taylor, one of the expert witnesses introduced by plaintiff, was permitted to testify as follows: "Q. Now, Doctor, I wish you would tell the jury in your own way what in your judgment is the trouble with Miss Torreyson and what is the probable cause of it? Mr. Jourdan: I object to that as calling for conclusion. That is the province of the jury. The Court: I think the Doctor is entitled to give an opinion as to what the plaintiff suffered from and what is the probable cause of it and the probable duration. Objection is overruled. To which ruling of the court defendant then and there duly excepted. A. Well, in forming our opinion, of course, we have got to take the history of the case into consideration. From the history of the case, I would call it a traumatic neuritis." Dr. Butler, another of her witnesses, testified as follows: "Q. Now, you may state, doctor in general terms what disease or affliction in your judg-

ment Miss Torreyson is now suffering from? A. Why, she is suffering from a nervous condition due to an injury—bodily injury, which is usually classed as traumatic neurosis. Mr. Jourdan: I move that the answer be stricken out. That is the province of the jury. The doctor has no right to state a conclusion. Motion overruled. To which ruling of the court defendant then and there duly excepted."

In his opening argument to the jury plaintiff's counsel made the following statement: "Mr. Crigler: We brought suit in this case, gentlemen of the jury, and ask in our petition, and ask it now at your hands, a verdict of $35,000. We brought this suit and ask this damage just the same as if the United Railways Company had executed its note to us, or if you had executed your note to me, without shaving the price of it in the least. And in this day of great corporations, and great millionaires, and great things, twenty-five or thirty thousand dollars— Mr. Jourdan: I except to that remark. The Court: There is no evidence of that here. Keep within the record, Mr. Crigler. Mr. Crigler: Well, I can't see why that is not a proper remark. The Court: Well, this defendant is a corporation, and you are appealing to a condition that is not in evidence. The only way to present the case is to present it within the record and draw such deductions as you see proper from it. Mr. Crigler: I am satisfied if the court had heard my statement it would not consider it improper. The Court: Well, you refer to great corporations and great millionaires. I don't know what millionaires have to do with the case. It is highly improper, and the purpose of it is perfectly apparent. You may proceed. Mr. Crigler: Well, in this great financial day the admeasurement of a certain sum of money is not like it was when you and I were boys— Mr. Jourdan: I except to that statement. There is no evidence of that in this case. The Court: Well, go

ahead. Mr. Jourdan: I submit that the court, should rebuke counsel for making that remark.'' Plaintiff's counsel made the following statement to the jury in his closing argument. ''Mr. Cullen: I have no criticism to make of that conductor. He has the instinct of human nature in him. You never saw a man whose careless conduct laid a human being low, either by cutting off a leg, or an arm, and leaving them prostrate in the street, that could look upon that bleeding body and say: 'Yes, it was my wrong; I did it.' When a man realizes that it is his misconduct, that he is at fault and blameable for the woes and sorrows of another, he says ''Avaunt! Avaunt! quit my sight; I am not responsible for it; she did it herself.' He would be more than human if he had the power to come right up and say, 'Yes, it is my act that injured this girl.' Why, sir, he couldn't look into the pale and quivering face of that girl and be human and say: 'Yes, I did it.' No, he had nothing to say. 'I didn't do it.' 'I won't excuse myself.' You know, gentlemen, that there even might be a criminal responsibility for negligence that will make a man shield himself.'' Mr. Jourdan: ''I except to that. The Court: Note the exception. Mr. Jourdan: I except to the failure of the court to rebuke counsel. Mr. Cullen: She (plaintiff) lived up there in that community so that she commanded the respect and admiration of everybody, and she sought employment not only there but elsewhere. She would go out into the world and work eight or nine months and make something for herself, and then when the time for vacation came on she would get some enjoyment out of this world. Where is she now? She is absolutely fatherless, motherless, helpless, penniless, a cripple to go down to the grave. Mr. Jourdan: I except to. that statement. The Court: The reporter will note the exception. Mr. Jourdan: I except further to the

court's failure to rebuke counsel. The Court: Very well."

CAULFIELD, J. (after stating the facts).—I. The court committed no error in permitting one physician to testify that in his opinion plaintiff suffered from what he would call "a traumatic neuritis" and in permitting another physician to state that in his opinion "she is suffering from a nervous condition due to an injury—bodily injury, which is usually classed as traumatic neurosis." These were nothing more than statements as to the nature and character of plaintiff's ailment, without suggesting the particular cause, and therefore were competent. See Jerome v. United Railways Co., 155 Mo. App. 202, 134 S. W. 107, for a full and pertinent discussion as to the competency of such testimony.

II. Likewise the court committed no error in overruling the objections on the ground of immateriality to the questions propounded to witnesses Dix and Rogers as to plaintiff taking care of her father, mother and aunt, and as to what she did for her father and aunt during their last sicknesses. These inquiries had some bearing on the question of what was the physical ability of the plaintiff before her injury and we think were good against a mere general objection.

III. As to the remarks of counsel, we are of the opinion that whatever prejudice might have resulted from the language first complained of, it was sufficiently met and cured by the admonition of the trial court. As to the next remark we find that defendant's counsel stated "I except to that statement. There is no evidence of that in this case," meaning that he *objected* to the statement. But it does not appear that defendant's counsel saved any *exception* to the *ruling* of the court thereon. He merely remarked "I submit

that the court should rebuke counsel for making that remark.'' In the next two instances we find counsel for the defendant at the end of what appears to be a series of statements saying, ''I except to that,'' and ''I except to that statement,'' without attempting to point out what particular statement he objected to and without in any wise indicating on what ground he based his objection. By failing to preserve an exception to the action of the trial court in overruling an objection to remarks of counsel or in failing to administer a reprimand, a party will be regarded as having waived his objection in that behalf (State v. Thurman, 121 Mo. App. 374, 98 S. W. 819; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720, 94 S. W. 967); and an objection is insufficient which does not point out the specific statement complained of and does not call the attention of the trial court to the specific grounds upon which it is based. [State v. Phillips, 233 Mo. 299, 135 S. W. 4; State v. Ruck, 194 Mo. 416, 92 S. W. 706.] We are, therefore, not inclined to consider the assignment of error which is aimed at the alleged improper remarks.

IV. At the instance of the plaintiff the court gave to the jury an instruction on the measure of damages as follows:

''If you find for the plaintiff in estimating and determining the amount of her damages you should take into consideration in connection with all the facts and circumstances in evidence such reasonable sums, if any, as you believe she necessarily paid out, or became obligated for, because of medical treatment and hospital charges on account of her injuries; the bodily pain and suffering and mental anguish endured by her, resulting from the injuries received; the character and extent of her injuries and whether they are permanent in their nature; the extent, if any, which she has been prevented and disabled by reason of such

injuries from working and earning a livelihood; and if from the evidence you believe and find that her injuries are reasonably certain to cause her pain and anguish in the future and reasonably certain to impair or lessen her ability to work or labor in the future, you should take said facts into consideration also; and if you find for plaintiff you should find for her in such sum as in your judgment under all the evidence in the case will reasonably compensate her for the injuries received, but not to exceed the sum named in the petition, to-wit: thirty-five thousand dollars.''

Defendant contends that this instruction was erroneous because it assumes that the plaintiff was injured and also assumes that she had endured bodily pain and suffering and mental anguish. Instructions substantially like this one were discussed and held good against a like criticism in Klutts v. The St. Louis, Iron Mt. & So. Ry. Co., 75 Mo. 642; McCarthy v. St. Louis Transit Co., 108 Mo. App. 317, 83 S. W. 298; Gayle v. Missouri Car & Fdy. Co., 177 Mo. 427, 453, 76 S. W. 987. These cases proceed on the theory that by giving such an instruction the court does not assume or declare that the plaintiff had been injured or suffered bodily pain, etc. Substantially like instructions were also approved without comment in Prewitt v. M., K. & T. Ry. Co., 134 Mo. 615, 36 S. W. 667; Cobb v. Railroad, 149 Mo. 135, 50 S. W. 310. Under those authorities we conclude that the giving of this instruction was not reversible error. That conclusion may also be upheld on another ground which finds support in the authorities. It is certain at least that the fact of the plaintiff being bruised and injured and the extent of her injuries were not assumed, for this instruction is addressed to the jury only in the event that they find for the plaintiff, and other instructions given make such a finding conditional upon the jury finding that plaintiff had been

bruised and injured, and state that the burden of proving her injuries and the extent of such injuries was upon the plaintiff. The jury must have understood that the fact of plaintiff having been injured and the extent of her injuries was for them to find from the evidence. At the most, then, it might be said that by the instruction the court assumed that if the plaintiff was bruised and injured as the evidence tended to show she was then she must have endured some bodily pain and suffering and mental anguish. It was not error to indulge such an assumption, for pain and anguish must necessarily have followed such bruising and injury. [Dunn v. Electric Ry. Co., 81 Mo. App. 42.] But in York v. Everton, 121 Mo. App. 640, 645, 97 S. W. 604, and in Glover v. Railroad, 129 Mo. App. 563, 575, 108 S. W. 105, the Kansas City Court of Appeals has decided that the giving of such an instruction is reversible error, and we deem such decision contrary to our decision herein.

The judgment is affirmed, but on account of this decision being, as aforesaid, contrary to the above mentioned previous decisions of the Kansas City Court of Appeals, this cause will be certified and transferred to the Supreme Court in accordance with the requirement of the Constitution of our state. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.