## MARGARETTE W. TORREYSON v. UNITED RAILWAYS COMPANY, Appellant.

### Division Two, December 21, 1912.

1. **TESTIMONY: Conclusion of Expert: Plaintiff's Disease.** It is not error, in a suit for damages for personal injuries, to permit a physician to testify that in his opinion plaintiff is suffering from traumatic neuritis, or that she is suffering from a nervous condition due to a bodily injury which is usually classed as traumatic neurosis.

2. ———: **Caring for Parents: General Objection.** Testimony that plaintiff took care of her father, mother and aunt during their last sickness has some bearing on the question of the physical ability of plaintiff prior to her injury, and it is not error to overrule a general objection to questions eliciting such testimony, namely, that it is immaterial.

3. **ARGUMENT OF COUNSEL: No Exception.** By failing to preserve an exception to the action of the court in overruling an objection to remarks of counsel, and by failing to save an exception to the refusal of the court to reprimand counsel, appellant will be regarded as having waived his objection.

4. ———: **Specific Objection.** An objection to statements made by counsel in his argument to the jury, is insufficient if it does not point out the specific statement complained of, and if it does not call the attention of the court to the specific grounds upon which it is based.

5. **NEGLIGENCE: Instruction: Assumption of Injury: Bodily Pain and Anguish.** An instruction which tells the jury that "if you find for plaintiff, in estimating and determining the amount of her damages you will take into consideration, in connection with all the facts and circumstances in evidence, such reasonable sums, if any, as you believe she necessarily paid out, or became obligated for, because of medical treatment and hospital charges on account of her injuries; the bodily pain and suffering and mental anguish endured by her, resulting from the injuries received," etc., does not assume that plaintiff was injured and does not assume that she had suffered bodily pain and suffering and mental anguish, when read in connection with other instructions which make a finding for plaintiff conditional upon the jury finding that plaintiff had been bruised and injured, and place the burden of proving said injuries and their extent upon plaintiffs. A finding for plaintiff necessarily implied that she was injured and that she had suffered bodily pain and anguish.

Torreyson v. United Railways.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds*, Judge.

AFFIRMED.

*Boyle & Priest, Morton Jourdan* and *T. E. Francis* for appellant.

(1) Plaintiff's instruction No. 2 is erroneous in that it assumes plaintiff was injured, and that she suffered mental and physical pain as a result thereof. These matters were disputed issues of fact and should have been submitted hypothetically to the jury. Plummer v. Milan, 70 Mo. App. 598; Evans v. Joplin, 76 Mo. App. 22; Fullerton v. Fordyce, 121 Mo. 13; Freeman v. Railroad, 95 Mo. App. 104. (2) The court erred in admitting, over defendant's objections, testimony for plaintiff tending to prove she gave attention to her father and mother during their last illness and was their main dependence. This evidence was immaterial to the issues, and was prejudicial to defendant, because it was calculated to arouse the sympathy of the jury for plaintiff. Stephens v. Railroad, 96 Mo. 214; Dayharsh v. Railroad, 103 Mo. 578; Mahoney v. Railroad, 168 Mo. 200; Williams v. Railroad, 123 Mo. 584. (3) The court erred in permitting Dr. Taylor and Dr. Butler to testify plaintiff was suffering from a nervous condition due to a bodily injury, and thereby invade the province of the jury. Glasgow v. Railroad, 191 Mo. 347; Taylor v. Railroad, 185 Mo. 239; Smart v. Kansas City, 208 Mo. 162; Thomas v. Railroad, 125 Mo. App. 131; Roscoe v. Railroad, 202 Mo. 576. (4) Plaintiff's counsel were guilty of gross misconduct in their argument to the jury, and the court erred in refusing to rebuke them therefor. Thompson on Trials, Secs. 958, 969; Massingale v. Rice, 94 Mo. App. 430; Haynes v. Trenton, 108 Mo. 133. (5) The verdict is excessive. Wellman v. Railroad, 219 Mo. 126.

*L. P. Crigler* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1) Error that verdict was procured against the weight of the evidence by improper argument is not assigned in motion for new trial. The thirteenth assignment of error in the motion for new trial relates to the alleged misconduct of counsel for the plaintiff in arguing the case, but said assignment of error does not count on the fact now argued that the misconduct resulted in bringing about a verdict for the plaintiff. An examination of the motion for new trial will reveal the fact that there is no specification sufficient to support the contention that the jury returned a verdict against the weight of the evidence on account of the improper arguments of counsel for plaintiff. Lynch v. Railroad, 208 Mo. 1. It being now conceded by appellant that the verdict is not excessive, it follows necessarily that any error in this instruction (which relates solely to the measure of damages) is harmless. But under the facts in proof in this case said instruction is not erroneous. Torreyson v. United Railways Co., 144 Mo. App. 626. There is no dispute about the fact of plaintiff's injury, and where the injury is of such nature that pain and mental anguish necessarily follow its infliction, an instruction may assume the existence of injury, and that it produced pain and anguish; and hence even if plaintiff's instruction 2 assumed that plaintiff was injured, still it was not erroneous, and defendant cannot complain because its own instructions contain similar assumptions. Dunn v. Electric Railway Co., 81 Mo. App. 42; Prewitt v. Railroad, 134 Mo. 615; McCarthy v. Transit Co., 108 Mo. App. 317; Cobb v. Railroad, 149 Mo. 135. The court will notice that plaintiff's instruction 1 required the jury to find (before they were authorized to allow any damage whatever) that plaintiff was thrown from the car, bruised and injured. Instructions must be taken

together, and plaintiff's instruction 2 did not become operative or controlling until the jury found that plaintiff was entitled to recover under her instruction 1; hence it was wholly unnecessary to require the jury to find the fact of injuries in plaintiff's instruction 2. As a matter of fact there was no denial that plaintiff was injured, and hence no error was committed if the court did assume she was injured. Taylor v. Iron Co., 133 Mo. 349; Gayle v. Car & Foundry Co., 177 Mo. 453; Sotebier v. Transit Co., 203 Mo. 715; Davidson v. Transit Co., 211 Mo. 357; Phelps v. Zinc Co., 218 Mo. 580.

KENNISH, J.—This cause was transferred to this court by the St. Louis Court of Appeals, for the reason, as stated, that the judges of said Court of Appeals deemed the decision rendered therein contrary to two former decisions of the Kansas City Court of Appeals, which decisions are cited in the opinion hereinafter set out.

The decision upon which the cause was certified to this court we set forth *in extenso*, as follows:

"The appeal in this cause was prosecuted to this court but was thereafter transferred by it to the Springfield Court of Appeals under the provisions of an act of the Legislature, approved June 12, 1909. [See Laws 1909, p. 396; also Sec. 3939, R. S. 1909.] In due time the cause was disposed of by the Springfield Court of Appeals through an opinion prepared by Cox, J., of that court, as will appear by reference to Torreyson v. United Railways Co., 144 Mo. App. 626. Subsequently, the Supreme Court declared the said legislative act, which purported to authorize the transfer of cases from this court to the Springfield court, to be unconstitutional. The cause was thereafter transferred by the Springfield Court of Appeals to this court on the theory that the jurisdiction of the appeal continued to reside here and the proceedings

had in the Springfield court with reference thereto were *coram non judice.*

"The case has been argued and submitted here, and upon due consideration, we find ourselves unable to concur in the views expressed by the Springfield court in the opinion above referred to.

"The suit is one to recover damages for personal injuries received by the plaintiff and alleged to have been caused by the negligent sudden starting of defendant's street car while plaintiff was in the act of alighting, thereby precipitating her to the ground. The amount prayed as damages was $35,000. The plaintiff had verdict and judgment for $5000, and the defendant has appealed.

"The record in this case is voluminous and bears most largely upon plaintiff's physical condition before and after her injury. It appears therefrom that in 1906 the plaintiff, Margarette W. Torreyson, was a school teacher, unmarried, forty-three years old, living at Martinsburg, Missouri, where she had resided for thirty-five years. During the last nineteen years she had taught the primary class of the school at Martinsburg, and when injured had been just re-employed for another year. The testimony is abundant to the effect that she was healthy, capable, energetic, active and industrious; not only a good school teacher, but a leader in school and public entertainments. She was quick and graceful in her movements. As one of the witnesses put it, 'she always went around like a cricket.' In all her life down to the time of her injury she appears to have been in perfect general health, missing only about a week from her school duties in all her school teaching career, some twenty-seven years. She had lived with her parents and toward the latter end of their lives, had the responsibility of the house, her mother being very old. Both of her parents died, the father about five years before she was injured. After his death she still kept house in the

old home, doing all the housework with the assistance
of a negro child. On July 29, 1906, while visiting in
the city of St. Louis, she became a passenger on one
of defendant's Euclid avenue cars and when the car
was stopped at her destination, the southwest corner
of Euclid avenue and West Pine boulevard, and when
according to her testimony, she was down on the step
in the act of alighting therefrom, the operatives in
charge caused it to be suddenly started with a jerk,
precipitating her to the ground, striking the back of
her head on the paving, and cutting a gash in it which
bled profusely. The blow dazed her and caused a
stunned sensation throughout her body. She was car-
ried to a near-by hotel, and a physician, Dr. Butler,
was called. The next day she was removed to a hos-
pital where she remained under the constant care of
Dr. Butler and the nurses for nine weeks. Dr. Butler
called in for consultation Dr. Fry, an eminent special-
ist on nervous diseases, who visited and examined her
frequently. She testified that while at the hospital she
was perfectly helpless, having to be turned in the bed;
to have her face washed, etc., suffered intense and al-
most continuous pain in the back, hip, small of the
spine and base of the skull, had no appetite and could
not sleep. At the end of the nine weeks her brother
took her from the hospital to his home at Laddonia,
Missouri. Her condition was somewhat improved, but
she was, and is still, very helpless. From the time she
arrived at her brother's house until the day of the
trial, she had not left the house but once, and that
was for two hours in a roller chair and that experi-
ence proved very exhausting and painful to her.
Though weighing only 112 pounds when injured, she
lost twenty pounds thereafter. A voluminous record
abounds with testimony of those who saw and observed
her, to the effect that her former health, ability and
energy have been destroyed, her former activities and
industry ceased, and she has become a trembling,

jerking, twitching nervous wreck, without power to
earn a livelihood or to perform ordinary household
duties, and usually confined to an invalid chair, able to
arise therefrom and walk but for short intervals and
then only haltingly, by the aid of a crutch and at the
price of intense pain and suffering.

"Four physicians, including Doctors Fry and
Butler, testified on behalf of the plaintiff. Their testi-
mony tended to prove that she is suffering from a
pronounced neurasthenic condition, that is, an extreme
exhaustion or breaking down of her nervous system,
and is unable to perform ordinary labor or to pursue
her vocation; that this condition is permanent and
was caused by her fall. On the other hand a physi-
cian who examined her at the instance of the defend-
ant testified that he had found absolutely no indi-
cation that she had sustained any injury to the nerv-
ous system as a result of her injury. Another, a spe-
cialist in mental and nervous diseases, appointed by
the court, testified that though she was quite nervous,
he found nothing to indicate that the nervousness was
in any wise due to any diseased condition of her nerv-
ous system. A surgeon, also appointed by the court,
testified that there was nothing abnormal in her condi-
tion from a surgical standpoint, and that he thought
her tremors were voluntary, but he testified on cross-
examination that he found physical indications of an
abnormal condition, an irritation of the nerves. He
also testified that the examination which he and the
other physicians appointed by the court had made,
was too abbreviated and unsatisfactory to justify a
decided opinion.

"The plaintiff read in evidence the deposition of
Capt. N. Dix, bearing on the length of time plaintiff
taught school, the continuity of her service, the state
of her health and strength, and the extent and char-
acter of her activities, during all the years up to the
time of her injury. During such reading the follow-

ing occurred: By counsel for plaintiff, reading:
'What, if anything, do you know about her giving
attention to her father and aunt during their last
sickness? Mr. Jourdan: Objected to as immaterial.
Objection overruled. To which ruling of the court
defendant then and there duly excepted. A. That
was her main—she kept house for him. She was the
main dependence.'

"Later, while plaintiff was reading in evidence
the deposition of one Rogers, the following occurred:
By counsel for plaintiff, reading: 'Q. What do you
know of her taking care of her father and mother
and aunt? Mr. Jourdan: I renew my objection to
that for the reasons heretofore given. Objection over-
ruled. To which ruling of the court defendant then
and there duly excepted. A. Well, I think she was a
faithful daughter. She stayed with them and kept
house for them all. I don't know that she supported
them. Q. What labor? A. Oh, well, she kept house.'
Dr. Taylor, one of the expert witnesses introduced
by plaintiff, was permitted to testify as follows: 'Q.
Now, Doctor, I wish you would tell the jury in your
own way what in your judgment is the trouble with
Miss Torreyson and what is the probable cause of it?
Mr. Jourdan: I object to that as calling for conclu-
sion. That is the province of the jury. The Court:
I think the doctor is entitled to give an opinion as to
what the plaintiff suffered from and what is the prob-
able cause of it and the probable duration. Objection
is overruled. To which ruling of the court defendant
then and there duly excepted. A. Well, in forming our
opinion, of course, we have got to take the history
of the case into consideration. From the history of
the case, I would call it a traumatic neuritis.' Dr.
Butler, another of her witnesses, testified as follows:
'Q. Now, you may state, Doctor, in general terms,
what disease or affliction in your judgment Miss Tor-
reyson is now suffering from? A. Why, she is suffer-

ing from a nervous condition due to an injury—bodily injury, which is usually classed as traumatic neurosis. Mr. Jourdan: I move that the answer be stricken out. That is the province of the jury. The doctor has no right to state a conclusion. Motion overruled. To which ruling of the court defendant then and there duly excepted.'

"In the opening argument to the jury plaintiff's counsel made the following statement: 'Mr. Crigler: We brought suit in this case, gentlemen of the jury, and ask in our petition, and ask it now at your hands, a verdict of $35,000. We brought this suit and ask this damage just the same as if the United Railways Company had executed its note to us, or if you had executed your note to me, without shaving the price of it in the least. And in this day of great corporations, and great millionaires, and great things, twenty-five or thirty thousand dollars— Mr. Jourdan: I except to that remark. The Court: There is no evidence of that here. Keep, within the record, Mr. Crigler. Mr. Crigler: Well, I can't see why that is not a proper remark. The Court: Well, this defendant is a corporation, and you are appealing to a condition that is not in evidence. The only way to present the case is to present it within the record, and draw such deductions as you see proper from it. Mr. Crigler: I am satisfied if the court had heard my statement it would not consider it improper. The Court: Well, you refer to great corporations and great millionaires. I don't know what millionaires have to do with the case. It is highly improper and the purpose of it is perfectly apparent. You may proceed. Mr. Crigler: Well, in this great financial day the admeasurement of a certain sum of money is not like it was when you and I were boys— Mr. Jourdan: I except to that statement. There is no evidence of that in this case. The Court: Well, go ahead. Mr. Jourdan: I submit that the court should rebuke counsel for making that

remark.' Plaintiff's counsel made the following state-
ment to the jury in his closing argument: 'Mr. Cul-
len: I have no criticism to make of that conductor.
He has the instinct of human nature in him. You
never saw a man whose careless conduct laid a human
being low, either by cutting off a leg, or an arm, and
leaving them prostrate in the street, that could look
upon that bleeding body and say: "Yes, it was my
wrong; I did it." When a man realizes that it is his
misconduct, that he is at fault and blameable for the
woes and sorrows of another, he says "Avaunt!
Avaunt! quit my sight; I am not responsible for it;
she did it herself." He would be more than human
if he had the power to come right up and say, "Yes,
it is my act that injured this girl." Why, sir, he
couldn't look into the pale and quivering face of that
girl and be human and say, "Yes, I did it." No, he
had nothing to say. "I didn't do it, I won't excuse
myself." You know, gentlemen, that there even might
be a criminal responsibility for negligence that will
make a man shield himself. Mr. Jourdan: I except
to that. The Court: Note the exception. Mr. Jour-
dan: I except to the failure of the court to rebuke
counsel. Mr. Cullen: She (plaintiff) lived up there
in that community so that she commanded the respect
and admiration of everybody, and she sought employ-
ment not only there, but elsewhere. She would go out
into the world and work eight or nine months and
make something for herself, and then when the time
for vacation came on she would get some enjoyment
out of this world. Where is she now? She is abso-
lutely fatherless, motherless, helpless, penniless, a
cripple to go down to the grave. Mr. Jourdan: I ex-
cept to that statement. The Court: The reporter
will note the exception. Mr. Jourdan: I except fur-
ther to the court's failure to rebuke counsel. The
Court: Very well.'

246 Mo.—45

"I. The court committed no error in permitting one physician to testify that in his opinion plaintiff suffered from what he would call 'a traumatic neuritis' and in permitting another physician to state that in his opinion 'she is suffering from a nervous condition due to an injury—bodily injury, which is usually classed as traumatic neurosis.' These were nothing more than statements as to the nature and character of plaintiff's ailment, without suggesting the particular cause, and therefore were competent. See Jerome v. United Railways Co., 155 Mo. App. 202, for a full and pertinent discussion as to the competency of such testimony.

"II. Likewise the court committed no error in overruling the objections on the ground of immateriality to the questions propounded to witnesses Dix and Rogers as to plaintiff taking care of her father, mother and aunt, and as to what she did for her father and aunt during their last sicknesses. These inquiries had some bearing on the question of what was the physical ability of the plaintiff before her injury and we think were good against a mere general objection.

"III. As to the remarks of counsel, we are of the opinion that whatever prejudice might have resulted from the language first complained of, it was sufficiently met and cured by the admonition of the trial court. As to the next remark we find that defendant's counsel stated 'I except to that statement. There is no evidence of that in this case,' meaning that he *objected* to the statement. But it does not appear that defendant's counsel saved any *exception* to the *ruling* of the court thereon. He merely remarked, 'I submit that the court should rebuke counsel for making that remark.' In the next two instances we find counsel for the defendant at the end of what appears

to be a series of statements saying, 'I except to that,' and 'I except to that statement,' without attempting to point out what particular statement he objected to and without in any wise indicating on what ground he based his objection. By failing to preserve an exception to the action of the trial court in overruling an objection to remarks of counsel or in failing to administer a reprimand, a party will be regarded as having waived his objection in that behalf. [State v. Thurman, 121 Mo. App. 374; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720.] And an objection is insufficient which does not point out the specific statement complained of and does not call the attention of the trial court to the specific grounds upon which it is based. [State v. Phillips, 233 Mo. 299; State v. Ruck, 194 Mo. 416.] We are, therefore, not inclined to consider the assignment of error which is aimed at the alleged improper remarks.

"IV. At the instance of the plaintiff the court gave to the jury an instruction on the measure of damages, as follows:

" 'If you find for the plaintiff, in estimating and determining the amount of her damages, you should take into consideration in connection with all the facts and circumstances in evidence such reasonable sums, if any, as you believe she necessarily paid out, or became obligated for, because of medical treatment and hospital charges on account of her injuries; the bodily pain and suffering and mental anguish endured by her, resulting from the injuries received; the character and extent of her injuries and whether they are permanent in their nature; the extent, if any, to which she has been prevented and disabled by reason of such injuries from working and earning a livelihood; and if from the evidence you believe and find that her injuries are reasonably certain to cause her pain and anguish in the future and reasonably certain

to impair or lessen her ability to work or labor in the future, you should take said facts into consideration also; and if you find for plaintiff you should find for her in such sum as in your judgment under all the evidence in the case will reasonably compensate her for the injuries received, but not to exceed the sum named in the petition: to-wit, thirty-five thousand dollars.'

"Defendant contends that this instruction was erroneous because it assumes that the plaintiff was injured and also assumes that she had endured bodily pain and suffering and mental anguish. Instructions substantially like this one were discussed and held good against a like criticism in Klutts v. St. Louis, Iron Mt. & So. Ry. Co., 75 Mo. 642; McCarthy v. St. Louis Transit Co., 108 Mo. App. 317; Gayle v. Missouri Car & Fdy. Co., 177 Mo. 427, 453. These cases proceed on the theory that by giving such an instruction the court does not assume or declare that the plaintiff had been injured or suffered bodily pain, etc. Substantially like instructions were also approved without comment in Prewitt v. M., K. & T. Ry. Co., 134 Mo. 615; Cobb v. Railroad, 149 Mo. 135. Under these authorities we conclude that the giving of this instruction was not reversible error. That conclusion may also be upheld on another ground which finds support in the authorities. It is certain at least that the fact of the plaintiff being bruised, and injured and the extent of her injuries, were not assumed, for this instruction is addressed to the jury only in the event that they find for the plaintiff, and other instructions given make such a finding conditional upon the jury finding that plaintiff had been bruised and injured, and state that the burden of proving her injuries and the extent of such injuries was upon the plaintiff. The jury must have understood that the fact of plaintiff having been injured and the extent of her injuries was for them to find from the evidence. At the most, then, it might be said that by the in-

struction the court assumed that if the plaintiff was bruised and injured as the evidence tended to show she was, then she must have endured some bodily pain and suffering and mental anguish. It was not error to indulge such an assumption, for pain and anguish must necessarily have followed such bruising and injury. [Dunn v. Electric Ry. Co., 81 Mo. App. 42.] But in York v. Everton, 121 Mo. App. 640, 645, and in Glover v. Railroad, 129 Mo. App. 563, 575; the Kansas City Court of Appeals has decided that the giving of such an instruction is reversible error, and we deem such decision contrary to our decision herein.

"The judgment is affirmed, but on account of this decision being, as aforesaid, contrary to the above mentioned previous decisions of the Kansas City Court of Appeals, this cause will be certified and transferred to the Supreme Court in accordance with the requirements of the Constitution of our State. It is so ordered."

The foregoing opinion is adopted as the opinion of this court, except in so far as it holds that the two decisions of the Kansas City Court of Appeals cited therein are in conflict with the conclusion reached. The instructions condemned in the two cases referred to we think distinguishable from the instruction considered in this case, and particularly so as to the instruction held erroneous in the case of Glover v. Railroad, 129 Mo. App. 563. We are of the opinion that the St. Louis Court of Appeals was fully warranted in affirming the judgment, so far as the said instruction is concerned, by precedents of this court, and therefore it would be profitless to enter upon a discussion of the two decisions deemed to be in conflict with that result.

An analysis of the instruction assailed herein will disclose that as a basis for awarding damages to the plaintiff, all of the facts except three were stated hypothetically. The three not so stated were: First,

"the bodily pain and suffering and mental anguish endured by her, resulting from the injuries received;" second, "the character and extent of her injuries and whether they are permanent in their nature;" and third, the assumption of injury in the clause beginning, "and if from the evidence you find and believe that her injuries are reasonably certain to cause her pain and anguish," etc. The second of the foregoing relates solely as to whether the injuries received were permanent in character, and to entitle plaintiff to recover damages upon that ground, a finding that the injuries were permanent is expressly required to be based upon the evidence, by a subsequent clause of the instruction. Therefore we have but two facts assumed, namely: (1) that plaintiff was injured, and (2) the bodily pain and mental anguish endured by her as a result of her injuries; and the jury was not authorized to award damages for either unless, as prefaced in the instruction, they should find in favor of plaintiff. A finding for plaintiff necessarily implied a finding that plaintiff was injured and also a finding that she had suffered bodily pain and mental anguish. This rule is firmly established by the decisions of this court. In the case of Chilton v. St. Joseph, 143 Mo. 192, this court considered the question of error assigned in the giving of the following instruction:

"In estimating plaintiff's damages, if the jury find for her, they will take into consideration not only the physical injury inflicted, the bodily pain and mental anguish endured and suffered, but may also allow such damages as appears from the evidence will reasonably result to her from her said injuries in the future," etc.

Discussing that instruction, the court (l. c. 203) said: "As to instruction numbered 4, it is only necessary to say that the damages are predicated only upon such injuries as were the necessary concomitants and

consequences of her misfortune, superinduced by defendant's negligence, and contains no unwarranted assumption, and in view of the extent of those injuries the verdict is not excessive."

In the case of Fullerton v. Fordyce, 144 Mo. 1. c. 532, discussing the same question, the court said: "But if plaintiff was injured, as charged, which fact the jury was required to find, there would be no reversible error in the instruction though physical and mental pain, as a result, was assumed. Pain is the natural result of such injuries as the evidence tends to prove plaintiff suffered, and may fairly be assumed to follow as a necessary consequence."

A similar instruction was reviewed and the same rule announced in the case of Stewart v. Allison, 150 Mo. 1. c. 343.

In view of the foregoing precedents, the Court of Appeals was following the established doctrine of this court in overruling the assignment of error predicated upon the giving of the instruction assailed by appellant.

We fully concur in the foregoing opinion, with the exception noted, and the judgment is accordingly affirmed. *Brown, P. J.,* and *Ferriss, J.,* concur.