## HARRY BLAIR, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY, Respondent.

### St. Louis Court of Appeals. Opinion Filed April 8, 1919.

1. **TRIAL PRACTICE:** Excavations: Instructions: Assumption of Facts: Question for the Jury. In an action for personal injuries sustained by falling into an unguarded excavation dug by defendant in the street, etc., an instruction which assumed as a fact that, if the jury found that a foot bridge had been placed and maintained over the excavation, such foot bridge measured up to the requirements of the ordinance with reference to fencing in such excavation, *held* erroneous; such question was one for the jury to determine under all the evidence in the case.

2. **EXCAVATIONS:** Excavations in Street: Injury to Pedestrian: Signal Lights: Instructions. In an action for personal injuries sustained by falling into an unguarded excavation dug by defendant in the street, etc., an instruction for defendant that if the jury find that the defendant put and maintained a red signal light near the foot bridge, and that subsequently some one removed the foot bridge and signal light, and before defendant had a reasonable time, under the circumstances, to restore the same the plaintiff was injured, then they must find for defendant, *held* erroneous, in that the instruction as requested would have made it possible for the jury to have found for the defendant even though the defendant or one of its agents or employees had removed the foot bridge and signal light.

3. ———: ———: ———: Failure to Fence: Ordinances: Instructions: New Trial. In such action, an instruction for defendant, which did not require the jury to find that defendant had a fence, as required by ordinance, guarding the excavation up to either side of the bridge, *held* erroneous; and that it was error on the part of the trial court to sustain defendant's motion for a new trial on the ground that he had so refused to give such instruction.

4. ———: ———: ———: **Evidence: Question for the Jury.** In an action for personal injuries sustained by falling into an unguarded excavation dug by defendant in the street, etc., evidence reviewed and *held* plaintiff made out a case for the jury.

5. ———: ———: ———: **Failure to Fence or Place Lights: Ordinances: Instructions.** In such action, an instruction for plaintiff, telling the jury that if the defendant failed to cause the excavation to be fenced in or failed to cause lights to be posted and kept burning, etc., *held* not erroneous when the ordinance clearly puts the duty upon defendant, not alone to fence in the excavation, but in addition thereto to cause lights to be placed and kept burning during the entire night.

6. **APPELLATE PRACTICE: Excavations: Injury to Pedestrian: Review: Instructions: Harmless Error.** In an action for personal injuries sustained by falling into an unguarded excavation dug by defendant in the street, etc., an instruction as to defendant's duty to keep the lights burning all night, while somewhat too broad, it must be regarded as harmless error where all the evidence in the case shows that the defendant had not complied with the ordinance requiring the excavation to be fenced.

7. **TRIAL PRACTICE: Excavations: Injury to Pedestrian: Instructions: Assumption of Facts.** In such action an instruction on the measure of damages *held* not erroneous, on the ground that it assumed that plaintiff had sustained injuries.

8. **DAMAGES: Excessive Damages: Personal Injuries: Verdict.** A verdict of $7500 *held* not excessive, where plaintiff, a man 53 years old, in good health, earning from $4000 to $5000 a year, was injured by falling into an unguarded excavation, whereby his lungs and heart were injured, the left shoulder shrunken flat, with a hardening and wastening of the muscles in that region, etc., which conditions were permanent, and where his earning capacity had dropped to almost nothing.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Kent K. Koerner,* Judge.

REVERSED AND REMANDED (*with directions*).

*Edw. W. Foristel* for appellant.

It is the practice in our appellant courts, when considering an appeal from the order of a trial court granting a new trial, to examine the entire record and

even though the reasons assigned by the trial court for granting such new trial are not tenable yet if upon such examination other reasons appear which would have justified such action on the part of the trial court the order granting the new trial will be affirmed. In this view of the situation we must examine the entire record as presented. (1) No exceptions were saved to the introduction or the exclusion of any evidence that were urged during the trial of the case. (2) The first instruction asked by plaintiff and given by the court was a proper statement of the law. Revised Code of St. Louis (Rombauer, 1912), Sec. 1115, p. 769. (3) Plaintiff's instruction on the measure of damages was a proper declaration of the law applicable to the case. Young v. Webb City, 150 Mo. 333; Chilton v. St. Joseph, 143 Mo. 192; Torreyson v. United Rys. Co., 246 Mo. 696. (4) As there was ample evidence to take the case to the jury the instruction in the nature of a demurrer to the evidence asked by the defendant at the close of plaintiff's testimony and again at the close of the entire testimony, were properly refused by the Court. Young v. Webb City, 150 Mo. 333, and cases cited. (5) The verdict was not excessive in view of the testimony as to the extent and permanency of the injuries sustained by plaintiff. Tierney v. United Rys. Co., 185 Mo. App. 726. (6) The real point at issue is the action of the trial court in refusing defendant's instruction referred to as "Defendant's refused instruction No. 2." This instruction not having been properly framed and not being a correct statement of the law was properly refused. Sec. 1115 Ordinances of St. Louis (1912; Myers v. Kansas City, 108 Mo. 480 (relied upon by defendant).

*Jourdan, Rassieur & Pierce* for respondent.

(1) The appellant's abstract commingles matters of record proper and matters of exception and there is nothing before this court for consideration except the petition, answer, reply and judgment of the court. Kea-

ton v. Weber, 233 Mo. 694, and cases cited; St. Louis v. Young, 248 Mo. 346. (2) The court properly sustained the motion for a new trial for error in failing to give defendant's instruction No. 2. Meyers v. City of Kansas, 108 Mo. 480; Pyburn v. Kansas City, et al., 166 Mo. App. 150. (3) The ruling of the court granting defendant a new trial should be affirmed for the following additional reasons: (a) Because plaintiff's main instruction (Instruction No. 1) is erroneous. Woodson v. Met. Street Ry. Co., 224 Mo. 685; Wheat v. St. Louis, 179 Mo. 581-2; Kaiser v. St. Louis, 185 Mo. 374; Cohn v. City of Kansas, 108 Mo. 393; Coffey v. City of Carthage, 186 Mo. 585. (b) Because plaintiff's instruction on the measure of damages is erroneous. (c) Because the verdict is excessive.

BECKER, J.—This is a suit for personal injuries alleged to have been sustained by the plaintiff by reason of falling into an excavation which had been dug by the defendant company on Bartmer avenue just west of Hodiamont avenue in the city of St. Louis. A judgment was rendered in favor of the plaintiff for $7500. The defendant was granted a new trial on the ground that the court had committed error in its refusal to give one of the instructions requested by the defendant. This appeal is from the order granting defendant a new trial.

The testimony shows that shortly after eight o'clock on the evening of the 5th of April, 1913, plaintiff walked south on Hodiamont avenue in St. Louis, and just as he stepped off the sidewalk of Hodiamont avenue, at its intersection with Bartmer avenue he fell into an excavation extending east and west on Bartmer avenue, and was injured.

The defendant had excavated for the purpose of laying conduits on Bartmer avenue eastwardly along the north side thereof and within a foot or two of the curb. At the northwest corner of the intersection of Bartmer avenue and Hodiamont avenue the defendant

had made an excavation about seven feet square and about eight feet deep for the purpose of putting in a manhole, so that the conduit extending eastwardly on Bartmer avenue would make a turn at right angles at Hodiamont avenue and run in a southwardly direction along the west curb of Hodiamont avenue.

Section 12 of an ordinance of the city of St. Louis, approved November 12, 1912, reads as follows:

"Section 1115, excavation in streets to be fenced. Obstructions, red light.

"Every person who shall cause to be made any excavation in or adjoining any public street, alley, highway or public place shall cause the same to be fenced with a substantial fence not less than three feet high, and so placed as to prevent persons, animals or vehicles from falling into said excavation; and every person making or causing to be made any such excavation, and every person who shall occupy or cause to be occupied any portion of any public street, alley, highway or public place, with building materials or any obstruction shall cause one red light to be securely and conspicuously placed on or near such excavation, building material or obstruction; provided, such obstruction does not exceed more than ten feet in length, and if over ten feet and less than fifty feet, two red lights, on at each end shall be so placed, and one additional light for each additional fifty feet or part thereof, and shall keep such lights burning during the entire night."

Plaintiff testified that he was walking south along the west sidewalk of Hodiamont avenue and when he stepped off of the sidewalk, intending to cross Bartmer avenue and continue on south he fell into defendant's excavation; that he saw no red lights at the place before he fell; that after he got out of the excavation he again looked about him but saw no red lights at the place he had fallen into the excavation; that there was a small footbridge near the excavation but not across it, and that he saw no fence as a guard for the excavation; that by reason of his fall his arm,

shoulder, hip and leg were bruised; that he sustained a severe contusion of his left shoulder and left side; that as a result of these injuries the muscles on his shoulder atrophied and that he has ever since suffered with short-ness of breath and is unable to stand any continued exertion; that he tires very easily.

Plaintiff further testified that before the accident he always enjoyed good health; that he was earning four to five thousand dollars per year; that his physical condition since he met with his injuries was such that though he returned to take his position and do the work that he had formerly done, it was impossible for him to do the work, necessitating his giving up his position; that he remained out of employment for several months; he then took up other employment and continued working for a while but again had to give up that position; that for four or five months before the trial he had not been engaged in any work.

Mrs. Henley and Mrs. Fogg, witnesses for plaintiff, testified that they were at the southwest corner of Hodiamont and Bartmer avenues at the time that plaintiff fell into the excavation and that as they walked across the street plaintiff got out of the excavation. Mrs. Henley testified that she did not see any red lights, and that what appeared to be a footbridge was lying to the side and if it crossed the excavation it was out of place, and crossed the ditch at an acute angle.

A Mr. Mosby testified that he saw plaintiff shortly after he had fallen into the excavation; that there was no fence around the excavation at all; that there were some pieces of four by four laid around the place that had been excavated for the manhole, and that the foot-bridge was lying about a foot from the hole that had been excavated for the manhole. He testified that he saw no red lights near the place where the footbridge lay.

Richard Schneider, for the defendant, testified that he was a night watchman in the employ of the defend-ant at the time of the accident and that on the evening

that plaintiff met with his injuries he had set out three lanterns around the manhole and two across Hodiamont avenue; that there was a footbridge to the west of the manhole; that the footbridge was placed just a little west of the center line of the sidewalk on Hodiamont avenue; that the excavation trench for the conduit at that place had been filled in to within eleven inches of the surface of the street; that the footbridge was about four feet long and about two feet wide and had railing three feet high on each side, made of gas pipe; that planks had been laid on bricks around the manhole; that during the course of his work he had to make the rounds of the excavation and that he returned to the place where plaintiff had fallen into the excavation after an absence of about fifteen or twenty minutes; that he saw the plaintiff there and was told by plaintiff he had walked into the ditch and had skinned his legs from the ankles to the knees; that at the time he noticed that two of the lanterns were not burning; that he examined them, turned up the wicks, relighted them, and that the lanterns then burned alright; that he did not know how the lanterns came to go out; that the lanterns which had gone out were the two lanterns nearest to the footbridge, one about six feet away and the other distant a little further.

John Ford testified for the defendant that he was in the employ of the defendant and in charge of the excavating work; that on the night in question, at quitting time, he went along the ditch and saw that it was "barricaded" and that the lights were all in place.

Thomas Morrissey, a city police officer, testified for the defendant that at seven thirty o'clock on the evening in question he saw three lighted lanterns placed about the manhole and saw the footbridge across the excavation leading from the sidewalk; also saw the lighted lanterns along the course of the excavation distant perhaps fifty feet from each other; that he re-

turned to the corner of Bartmer and Hodiamont avenues between eight and eight thirty o'clock and saw plaintiff there and talked to him, and that plaintiff complained of his shins being bruised and skinned against the bricks where he had stepped into the hole.

The testimony of the physicians who examined plaintiff, and such of the instructions as may be necessary, will be adverted to in the opinion.

I. The learned trial court sustained defendant's motion for a new trial on the ground that it had committed error in refusing to give the following instruction requested by the defendant, to-wit:

"If the jury find and believe, from the evidence, that on the 5th day of April, 1913 the defendant, through its employees, placed and maintained a footbridge over the excavation at the Hodiamont avenue crossing, and put and maintained a red signal light near the same; that subsequently *some one* removed the foot bridge and signal light, and, before defendant had a reasonable time, under the circumstances, to restore the same, the plaintiff was injured, then the plaintiff cannot recover against this defendant, even though you should also find that the plaintiff was exercising reasonable care for his own safety at the time." (Italics ours.)

We are of the opinion, after an examination of defendant's refused instruction, that the learned trial judge was correct in his refusal to give the same, and that it was error to grant defendant's motion for a new trial on the ground of such refusal. It will be noted that such instruction assumed as a fact that if the jury found that a footbride had been placed and maintained over the excavation at the Hodiamont avenue crosing, that such footbridge measured up to the requirements of the ordinance with reference to the fencing in of such excavation, which was a question for the jury to determine under all the evidence in the case.

The instruction is also faulty in that the jury are instructed that if they find that the defendant put and maintained a red signal light near the footbridge and that "subsequently *someone* removed the footbridge and signal light and before defendant had a reasonable time, under the circumstances, to restore the same the plaintiff was injured," then they must find for the defendant; the instruction should have read that "subsequently *someone other than the defendant or any of* its agents or employees, without the knowledge of the defendant, had removed the footbridge and signal light, etc.," or the jury should have been instructed that if the footbridge and signal light, "without the fault or negligence of the defendant," had been removed, etc. In other words, the instruction as requested would have made it possible for the jury to have found for the defendant even though the defendant or one of its agents or employees had removed the footbridge and signal light, which is not the law.

Again, the instruction did not require the jury to find that the defendant had a fence, as required by ordinance, guarding the excavation up to either side of the bridge. For the above reasons we rule that the learned trial judge was correct in originally refusing to give the requested instruction, and that it was error on his part to sustain defendant's motion for a new trial on the ground that he had so refused to give such instruction.

II. In view of the fact that we hold it was error to grant a new trial upon the particular ground assigned, it becomes necessary for us to examine the entire record to see if it contains any error which will justify the granting of a new trial to defendant.

III. The testimony in the case was introduced practically without objection or exception on either side, and there is no point raised on this score.

IV. At the close of the plaintiff's case and again at the close of all the evidence the defendant offered an instruction in the nature of a demurrer, both of which were refused. But from the statement of facts which we have set out above it appears that the plaintiff made out a case for the jury.

V. The plaintiff's instruction No. 1, which covers the entire case and directs a verdict, is criticised by the learned counsel for appellant. It reads as follows:

"The court instructs the jury that if you believe from the evidence that on or about April 5, 1913, defendant caused an excavation or obstruction to be made in Bartmer avenue at or near its intersection with Hodiamont avenue, in the city of St. Louis, Missouri, and that Hodiamont avenue and Bartmer avenue at that point were public streets and that said excavation was allowed to remain open during the night, then it was the duty of the defendant to cause said excavation to be fenced in with a substantial fence, not less than three feet high, and so placed as to prevent persons from falling into said excavation, and it was also the duty of defendant to cause one red light to be placed on the said excavation, provided said excavation did not extend more than ten feet in length, and if said excavation was more than ten feet in length two red lights, and to keep such lights burning during the entire night; and if you further find from the evidence that defendant failed to cause said obstruction to be so fenced in, *or* if you believe from the evidence that defendant failed to cause lights to be posted and kept burning as aforesaid; and if you further believe from the evidence that on the date aforesaid plaintiff was crossing Bartmer avenue at Hodiamont avenue at night, and by reason of the failure of defendant to cause such excavation to be fenced as aforesaid (if you find the defendant failed to do so), or if, by reason of the failure of defendant to cause lights to be posted and kept burning as aforesaid (if you find the defendant did fail to do so) plaintiff stepped or fell into the said excavation and

was injured, and if you further find that plaintiff, while crossing said street was using reasonable care for his own safety, then your verdict will be for plaintiff.''

This instruction we find is based on section 1115 of the Revised Code of St. Louis (Rembauer 1912), the substance of which section was set forth in plaintiff's amended petition and the ordinance itself duly introduced by plaintiff.

Referring to the ordinance we find that there is a double duty imposed by it upon anyone making an excavation of the kind described in the petition. First, it must be ''fenced in with a substantial fence not less than three feet high, and so placed as to prevent persons from falling into such excavation,'' and second, the person who has made the excavation ''shall cause one red light to be securely and conspicuously placed at or near such excavation.'' While appellant admits that the instruction follows the language of the ordinance, it is argued that the instruction is too broad and also that the instruction uses the disjunctive ''or,'' thereby telling the jury that if the defendant did not so fence in the excavation then the plaintiff could recover even though the defendant had the red lights burning at the time to warn him of the excavation. This point is without merit in that the ordinance clearly puts the duty upon the defendant not alone to fence in the excavation with a substantial fence, but in addition thereto to cause lights to be placed and kept burning during the entire night. Furthermore, according to the testimony of the defendant the two red lights nearest the footbridge were admittedly found not to have been burning when the defendant's watchman arrived at the place where plaintiff had fallen into the excavation. Nor in view of the ordinance would it follow that if the defendant had no substantial fence guarding the excavation, but had complied with the ordinance with reference to placing red lights along such excavation, that the plaintiff upon that mere showing could be held guilty of contributory negligence as a matter of law. We rule that the ordi-

nance required the defendant to do two things for the safety of the public and if the defendant negligently failed to do either or both of the things required of it by such ordinance plaintiff is entitled to recover, provided that at the time he fell into the excavation he was using reasonable care for his own safety.

As to the criticism that the instruction is too broad as to defendant's duty to keep the lights burning, we think that the instruction is subject to some criticism on this score. [Myers v. City of Kansas, 108 Mo. 480, 18 S. W. 914.] However, all the evidence in the case, both that of the defendant as well as that of the plaintiff, as it appears in the record before us, shows that the defendant had not complied with the ordinance requiring the said excavation to be fenced in with a substantial fence not less than three feet high and so placed as to prevent persons from falling into the excavation; consequently the jury could not avoid finding that the defendant had violated the ordinance in this respect, and the fact that the instruction was somewhat too broad in respect to the defendant's duty to keep the lights burning all night must be regarded as harmless error.

VI. It is contended that plaintiff's instruction on the measure of damages is erroneous on the ground that it assumed that plaintiff sustained injuries, although the question whether plaintiff had sustained any injuries at all was an issue in the case. This point is without merit. The said instruction reads as follows:

"The court instructs the jury that *if your verdict is for plaintiff* you will assess his damages at such a sum as you may find from the evidence will be a fair compensation to him: (Italics ours.)

"First. For pain of body and mind, if any, which the plaintiff has suffered by reason of his injuries, and directly caused thereby, and for pain of body and mind, if any, which the jury find and believe from the evidence the plaintiff is reasonably certain to suffer in the future,

by reason of his injuries, and directly caused thereby.

"Second. For such expense for medical services, if any, the plaintiff has necessarily incurred and become obligated for, by reason of his injuries, and directly caused thereby.

"Third. For loss of earnings, of his labor, if any, which the plaintiff has suffered, by reason of his injuries, and directly caused thereby, and for loss of earnings of his labor, if any, in the future which the jury find and believe from the evidence he is reasonably certain to suffer by reason of his injuries and directly caused thereby."

It is clear to us that the first part of the instruction, "If your verdict is for the plaintiff you will assess his damages," qualifies all that is contained in each specification of damages that follows, and in view of plaintiff's other instruction the jury could not find for the plaintiff unless they found that he had been injured, and instructing the jury that "if your verdict is for the plaintiff" is equivalent to telling the jury "if you find that plaintiff was injured." [See Young v. Webb City, 150 Mo. 333, 1. c. 343, 51 S. W. 709; Torreyson v. United Railways Co., 246 Mo. 696, 152 S. W. 32.]

VII. Lastly we come to the size of the verdict, which was $7500. Appellant argues that it is excessive. According to the testimony, plaintiff was a man fifty three years of age and in good health, and was earning four to five thousand dollars per year prior to the time he met with his injuries.

Dr. Frumson testified that he had known plaintiff for fifteen years, during which time he had treated him for minor matters; that the day after plaintiff had fallen into the excavation he examined him and found bruises on his left shoulder and on the left side of the chest, and on the thigh and knee. On examining the injury on the side, the witness thought he felt a fracture, and, judging from the amount of the pain, he later became convinced that there must have been a

fracture; that plaintiff spit up blood which indicated that the pleural membrane covering the lungs was ruptured and that the hemorrhage was caused by reason thereof. Dr. Frumson further testified that he had examined plaintiff shortly before the trial of the case; that he found the plaintiff's left shoulder "broken down" and was much lower than the right; that the muscular power of the left arm was very much less than the right and that the muscle was atrophic—wasted away; that the condition of the left arm and shoulder and muscles is permanent; that when he first examined plaintiff, the day after he was injured, he found that plaintiff's heart had a "double murmur"—a rubbing sound—and a short time thereafter plaintiff developed a rubbing sound with each contraction and dilation of the heart, which he termed mitral insufficiency, and that one of the ventricles of the heart itself was injured. The rubbing sound indicates that there had been an inflammation in the sac of the heart; that his examination and inspection of plaintiff's body and the test made by him with instruments upon plaintiff's heart show that the cause of the inflammation in the sac of the heart was of traumatic origin, namely, injury from a blow; that the plaintiff's strength was impaired and there is nothing "that medicine can do to cure that;" that all of the injuries he had testified to are permanent; that the condition of plaintiff's heart would impair and lessen his chances of recovery from any serious illness; that plaintiff was not "as fit to do ordinary work as he was before."

Dr. Wolfort examined the plaintiff a few days before the trial and found that the whole region along plaintiff's left shoulder had shrunken flat with a hardening and wasting of the muscles in that region and lessened ability; a smaller radius of action for the arm than his right arm, and in trying to force plaintiff to move the arm plaintiff evidenced a great deal of pain; that the muscles attached to the shoulder joint had shrunken and that this condition is permanent; that

these injuries could have been caused by a blow; that he found the heart sound abnormal, indicating that the sac covering the heart had at some time become inflamed, resulting in a pericardial rub which "is distinctly an abnormal diseased condition," which will not yield to treatment—is permanent—"the outcome can only be a bad one;" that plaintiff's pulse, instead of being a normal pulse of seventy-two to seventy-eight per minute, was but fifty-one per minute; that "just the exertion of going around would tire him because his heart would not respond to his work. The fact that his pulse beats from twenty to twenty-five lower and slower than the normal heart pulsation shows that he cannot stand the activity that a normal man can stand."

Dr. Schlueter, a witness for the defendant, corroborated what Dr. Wolfort had testified to with reference to the then condition of the plaintiff, and in his opinion the condition of plaintiff's left shoulder was permanent as was also the condition of plaintiff's heart, which he did not think would get any better than it was at that time, nor did he think it would get any worse.

A witness connected with the company with whom the plaintiff was working at the time he met with his injuries testified that the plaintiff was earning at that time not less than three thousand dollars a year but that his earning capacity after that had dropped to almost nothing.

In view of this testimony we are unable to hold that the verdict can be said to be excessive.

Holding as we do that the learned trial judge committed error in sustaining plaintiff's motion for a new trial on the ground that the court had refused to give the instruction requested by the defendant; and not finding any prejudicial error in the record, the judgment is accordingly reversed and the cause remanded with directions to enter judgment on the verdict rendered by the jury.

*Reynolds, P. J.,* and *Allen, J.,* concur.